**Pankaj Karan Singh KATARIA,**
**Petitioner,**

v.

**IMMIGRATION AND**
**NATURALIZATION SERVICE,**
**Respondent.**

No. 99–70796.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 2000

Filed Nov. 21, 2000

Deborah L. Smith, Simmons, Ungar, Helbush, Steinberg & Bright, San Francisco, California, for the petitioner.

Cindy S. Ferrier, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent.

Before: D.W. NELSON, THOMPSON, and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Pankaj Karan Singh Kataria, a native and citizen of India, petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of an immigration judge's ("IJ") denial of his application for asylum and withholding of removal. Kataria alleged past persecution and a well-founded fear of future persecution on account of his membership in the All India Sikh Student Federation, a group seeking the establishment of the independent Sikh state of Khalistan. We have jurisdiction pursuant to 8 U.S.C.

§ 1252(b)(1). We conclude that the BIA erred by denying Kataria's application on the ground that he failed to provide documentary evidence to corroborate his testimony. Accordingly, we grant the petition for review.

## I.

Kataria is a 36–year–old native and citizen of India who entered the United States on July 18, 1997, with a non-immigrant business visitor's visa. On March 23, 1998, he signed and swore to an application for asylum and withholding of removal alleging persecution on account of race, religion, nationality, membership in a social group and political opinion. By issuance of a notice to appear on April 6, 1998, the Immigration and Naturalization Service charged Kataria with removability under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa.[1]

At his asylum hearing, Kataria testified that he is a Sikh and that he was raised in the Punjab.[2] In 1994, he joined the All India Sikh Student Federation ("AISSF"), a group seeking the establishment of the independent Sikh state of Khalistan in what is now the state of Punjab. According to his testimony, Kataria served as treasurer for the AISSF and his duties included procuring contributions to send poor children to school, arranging conferences, posting AISSF posters that advocated boycotting elections, and assisting girls from AISSF families to marry into good families. Kataria also stated that he used his personal wealth as the owner of a shopping complex to establish and maintain a sewing school with the purpose of giving widows and orphan girls a practical skill.

Kataria testified that the police were angry with him for raising money to benefit the families of Sikh extremists who had been killed by the police, and that the police warned him to cease his activities. In June 1995, Kataria was asked to report to the police station after returning home from a commemoration for those killed in the Indian police attack on the Sikh Golden Temple many years earlier. At the police station, Kataria was berated, slapped, and accused of helping extremists. He was detained for three to four hours. The police warned Kataria to stop working for the AISSF.

In August 1995, Indian police officers arrested Kataria a second time while he was attending the wedding of the sister of a murdered member of the AISSF. The expenses of the wedding were paid for by the AISSF and Kataria. According to his testimony, Kataria was arrested because the police had previously warned him not to associate with extremists and because the police believed that he, as treasurer of the AISSF, had information regarding how the bride and the bride's family had been able to afford such an elaborate and expensive wedding. Following his arrest, Kataria was tortured over the course of three days with beatings and electric shock. He was released after his father paid a bribe.

Fearing that the police would re-arrest him, Kataria then went into hiding. He changed his identity by cutting his hair and shaving off his beard. Ultimately, frightened of "elimination," Kataria obtained a visitor's visa to participate in a Punjabi conference to be held in Milwaukee, Wisconsin. He left India in July 1997, and came to the United States.

In response to questions from the IJ about his commitment to the Sikh religion, Kataria testified that he currently wears only one of the five symbols of Sikh faith—a special undergarment known as a "kachch."[3] Kataria stated that the "kara"

---

1. Kataria's petition is governed by the permanent provisions of Illegal Immigration Reform and Immigrant Responsibility Act because immigration proceedings were initiated after April 1, 1997. *See Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997).

2. Kataria proceeded pro se before the IJ. He was represented by counsel before the BIA and is represented by counsel in this petition for review.

3. The five symbols consist of: "kes" (long hair), "kangha" (comb), "kachch" (sacred un-

he had been wearing had broken nearly two months before the hearing. Kataria did not explain why he does not wear the remaining three Sikh symbols, although he testified that he cut his hair, shaved his beard, and stopped wearing a comb in India between December 1995 and January 1996 in an effort to change his identity following his second arrest by the police.[4]

In response to questions from the IJ about why the Sikh name "Singh" appeared on his asylum application, but not on his passport or visa, Kataria explained that he did not use the name "Singh" on his passport or visa "because people are afraid that they won't be issuing me a passport."

In response to questions from the IJ about his membership in the AISSF, Kataria conceded that he had no evidence of his affiliation with the AISSF, but stated that he could produce a receipt of his membership "if it's available." He added that he did not have a receipt of his membership because he was not able to carry documents with him when he left India.

Finally, in response to questions about why his asylum application stated that he resided in New Delhi from birth until he left India in July, 1997, when he had testified at the hearing that he had lived in the Punjab his entire life, Kataria explained that the application was typed for him and that "I just signed the application."[5] Kataria further explained that he was raised in the village of Lallai Kalan in the Punjab.[6] He attended school in Lallai Kalan until the tenth grade. Then, in order to pursue his education, he attended high school in neighboring Faridabad before returning to attend Punjab University in Chandigarh. Upon receiving his bachelor's degree from Punjab University, Kataria returned to Lallai Kalan where he managed the family's shopping complex located near his village. Kataria testified that the New Delhi address was listed on his asylum application because he received his visa in New Delhi and this was his last address before leaving India.

At the conclusion of Kataria's testimony, the IJ offered Kataria a continuance to give him an opportunity to obtain documentary support of his asylum claim. The IJ stated that he was concerned about mistakes in Kataria's application, and suggested that Kataria provide evidence pertaining to his addresses, residences and employment while in India, his association with the Sikh religion and his village in the Punjab, and the alleged arrests, injuries and medical treatment associated with Kataria's asylum claim.

A continued hearing was held two and a half months later. At that hearing, Kataria appeared without any additional documentation. He explained that, although his sister and mother still resided in India, his sister no longer maintained contact with his family after her marriage and his mother was too elderly and uneducated to provide assistance. Kataria also stated that he knew of no one who could assist him with his claim.

The IJ denied Kataria's application for asylum and withholding of removal, but granted him the privilege of voluntary departure on the condition that he post a $1000 bond and exhibit a valid Indian passport. Explaining his decision, the IJ discussed concerns about whether Kataria was in fact a Sikh, whether he actually lived in the Punjab, whether he was genuinely active in the AISSF, and whether he was treated for injuries sustained during his detention by police. The IJ then stated:

derwear), "kara" (steel bracelet), and a "kirpan" (ceremonial knife). *See Cheema v. Thompson,* 67 F.3d 883, 884 (9th Cir.1995).

**4.** Kataria stated that he is unable to wear a turban because he was not baptized in his faith.

**5.** Under a separate heading entitled "Address Prior to Arrival in the U.S.," Kataria listed "Sector 8–A Chandigarh, India" which is located in the Punjab.

**6.** Kataria listed his native language on the asylum application as Punjabi.

The Government in this particular case is correct. This case falls generally within the decisions of the Board of Immigration Appeals in *In re S–M–J–*, Int. Dec. 3303 (BIA 1997); *In re M–D–*, Int. Dec. 3339 (BIA 1998); and Int. Dec. *In re B–B–* (BIA 1998). As the Board of Immigration Appeals has indicated, where corroborating evidence could reasonably be expected to be obtained, then the alien has the obligation and affirmative duty to corroborate his claim to the degree that he can or otherwise reasonably explain his failure to do so. [Kataria] has not done that. Since his testimony standing alone is not considered sufficiently credible to justify the relief which he seeks, the Court will find that he has [not] sustained his burden of proof both as to asylum and withholding of deportation as to India.

The BIA dismissed Kataria's appeal of the IJ's decision for the reasons stated therein and adopted the IJ's findings and conclusion.[7] The BIA added:

> [T]he regulations, our precedent, and precedent from the Ninth Circuit Court of Appeals provide that a respondent's testimony, if credible, *"may* be sufficient to sustain the burden of proof without corroboration"* (emphasis added). 8 C.F.R. § 208.13(a). *See also Matter of Mogharrabi, supra,* at 445 (observing that the testimony of an applicant for asylum, standing alone, may suffice to establish his persecution claim "where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear"); *Campos–Sanchez v. INS,* 164 F.3d 448 (9th Cir.1999). We have also held, however, that where there are discrepancies in the record which are not sufficient to warrant an adverse credibility finding but that nevertheless raise questions about the respondent's claim, the respondent should resolve these problems by providing cor-

roborating documents. *Matter of Y–B–, supra.*

In this case, the respondent's evidence and testimony raise questions about whether the respondent is a Sikh, whether he lived in the Punjab, and whether he was active in the AISSF.... The respondent did not resolve any of these problems in his claim with corroborating documents.

The BIA concluded that because Kataria failed to provide any corroboration for his testimony, he failed to meet his burden of establishing eligibility for asylum or entitlement to withholding of removal. The BIA dismissed Kataria's appeal and this petition for review followed.

**II.**

▮ Where, as here, the BIA adopts the IJ's decision while adding its own reasons, we review both decisions. *See Chand v. INS,* 222 F.3d 1066, 1072 n. 7 (9th Cir.2000). We review a determination that an applicant has not established eligibility for asylum under the substantial evidence standard of review. *See Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). To prevail, the applicant must show that the evidence not only supports, but compels the conclusion that the asylum decision was incorrect. *See Cordon–Garcia v. INS,* 204 F.3d 985, 990 (9th Cir.2000).

**III.**

▮ To establish eligibility for asylum, an applicant must prove that he or she is a "refugee." *See Cordon–Garcia,* 204 F.3d at 990. A refugee is defined as an alien who is unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994). "Persecution" is

---

7. The BIA denied Kataria's request to introduce additional documentation into evidence on the ground that "[t]he Board is an appel-

late body whose function is to review, not create a record." Kataria does not appeal this ruling.

defined as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." *Cordon–Garcia*, 204 F.3d at 991 (quoting *Singh*, 134 F.3d at 967).

To establish a well-founded fear of persecution, an applicant must demonstrate both a subjective and an objective fear of persecution. *See Mejia–Paiz v. INS*, 111 F.3d 720, 723 (9th Cir.1997). An applicant can satisfy the subjective component by credibly testifying that he genuinely fears persecution. *See id.* An applicant can satisfy the objective component in two ways. *See Ladha v. INS*, 215 F.3d 889, 897 (9th Cir.2000). The first way is to prove persecution in the past, giving rise to a rebuttable presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i) (2000). The second way is to "show a good reason to fear future persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution." *Ladha*, 215 F.3d at 897 (quoting *Duarte de Guinac v. INS*, 179 F.3d 1156, 1159 (9th Cir.1999)). The objective requirement can be met "either through the production of specific documentary evidence or by credible and persuasive testimony." *Id.*

An alien is entitled to withholding of removal "if the evidence demonstrates a clear probability that the applicant would be persecuted were he to be deported to his home country." *Duarte de Guinac*, 179 F.3d at 1159. "In order to demonstrate a clear probability of persecution, a petitioner must prove that 'it is more likely than not' that he would be persecuted on account of a statutorily-protected ground." *Navas v. INS*, 217 F.3d 646, 655 (9th Cir.2000). An alien seeking withholding of removal to any country must show that his life or freedom would be threatened in that country on account of one of the enumerat-

ed grounds. *See* 8 U.S.C. § 1231(b)(3) (Supp. II 1996).

## IV.

It is well established in this circuit that the BIA may not require independent corroborative evidence from an asylum applicant who testifies credibly in support of his application. *See Ladha*, 215 F.3d at 901 (disapproving the corroboration requirement discussed in *Matter of S–M–J–*, Interim Decision 3303 (BIA 1997) (en banc)); *see also Abovian v. INS*, 219 F.3d 972, 978 (9th Cir.2000) (stating that corroborative evidence is not required from an asylum applicant whose testimony is unrefuted). It is also well settled that we must accept an applicant's testimony as true in the absence of an explicit adverse credibility finding. *See Navas*, 217 F.3d at 652; *Ladha*, 215 F.3d at 901; *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994).

In the present case, the BIA did not make an explicit adverse credibility finding. *See de Leon–Barrios v. INS*, 116 F.3d 391, 394 (9th Cir.1997) (stating that while an adverse credibility finding does not require the recitation of unique or particular words, it must be explicit); *see also Shoafera v. INS*, 228 F.3d 1070, 1075 (9th Cir.2000) ("[T]he law of this circuit does not permit implicit adverse credibility determinations."). Rather, the BIA determined that Kataria, the "respondent" in the BIA proceedings, failed to meet his burden of establishing his eligibility for asylum because "the respondent's evidence and testimony raise questions about whether the respondent is a Sikh, whether he lived in the Punjab, and whether he was active in the AISSF" and Kataria "did not resolve any of these problems in his claim with corroborating documents."[8] *Compare Maldonado–Cruz v. INS*, 883 F.2d 788, 792 n. 7 (9th Cir.1989) ("[a]lthough the IJ expressed some concern about Maldonado's credibility," the presumption of

---

8. The BIA also stated: "The Immigration Judge did not specifically find [Kataria's] testimony to be incredible, and the cases cited by

[Kataria] regarding credibility are therefore inapplicable."

credibility was appropriate because "there [was] no clear indication that the IJ disbelieved the basic facts upon which we make our legal determination now.").

■ In the absence of an explicit adverse credibility finding, we must assume that Kataria's factual contentions are true. *See Navas,* 217 F.3d at 652 ("Where the BIA does not make an explicit adverse credibility finding, we must assume that the applicant's factual contentions are true."). Because Kataria's testimony is deemed to be credible, the BIA erred by requiring him to produce corroborating evidence. *See Ladha,* 215 F.3d at 901.

Our decision in *Sidhu v. INS,* 220 F.3d 1085 (9th Cir.2000) is not to the contrary. In *Sidhu,* the applicant was a native and citizen of India who claimed persecution by Sikh separatists and the government. The asylum claim was based primarily on an incident that occurred on the applicant's family farm in which the applicant and his father were forced to provide aid to Sikh militants. *See id.* at 1087. The BIA found that the applicant was not credible because the applicant failed to offer a credible explanation for why he did not present the testimony of his father (who was present in the United States at the time of the asylum hearing) at the asylum hearing. *See id.* at 1088. We denied the petition for review, holding that "where the IJ has reason to question the applicant's credibility, and the applicant fails to produce non-duplicative, material, easily available corroborating evidence and provides no credible explanation for such failure, an adverse credibility finding will withstand appellate review." *Id.* at 1092; *see also Mejia–Paiz v. INS,* 111 F.3d 720, 724 (9th Cir.1997) (affirming IJ's adverse credibility finding based on alien's failure to produce readily-accessible, material corroborating evidence).

Here, unlike in *Sidhu,* the BIA did not make an adverse credibility finding. Instead, the BIA merely noted questions

about Kataria's claim and concluded that Kataria failed to meet his burden of establishing asylum eligibility. We made this distinction in *Sidhu:* "As our recent opinion in *Ladha v. INS,* 215 F.3d 889 (9th Cir.2000), makes clear, *Ladha's* holding-that corroboration of credible testimony is unnecessary-has no bearing on the question of whether failure to corroborate can justify an adverse credibility determination." *Sidhu,* 220 F.3d at 1090 n. 2.

## V.

■ Treating Kataria's testimony as credible and applying the governing law of this circuit, we conclude that the evidence compels the conclusion that Kataria has established past persecution on account of his political opinion.[9] *See Navas,* 217 F.3d at 655–56 ("In order to establish eligibility for asylum on the basis of past persecution, an applicant must show: (1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' [political opinion]; and (3) is committed by the government ...") (footnote omitted). Kataria testified that he was arrested on two occasions by Indian police, detained for three days following the second arrest, and beaten and subjected to electric shock torture by members of the Indian police force. Kataria also testified that the police did these things to him because they knew he was a member of the AISSF and they wanted him to cease his AISSF-related activities.

■ Because Kataria established past persecution on account of his political opinion, he is entitled to the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i) (2000). The INS bears the burden of rebutting this presumption. One way to rebut the presumption is to produce evidence demonstrating that country conditions have changed to the extent that the presump-

---

**9.** Although Kataria originally alleged persecution on account of race, religion, nationality, membership in a social group and political opinion, his petition to this court is based solely on persecution on account of political opinion.

tion of future persecution is unwarranted. *See id.*

 Although evidence of the country conditions in India was presented, that evidence did not rebut the presumption. The 1996 country conditions profile of India provides that "[f]rom the early 1980's until late 1993 or early 1994, there was considerable violence in the state of Punjab between Sikh militants on the one side and the law enforcement authorities of the Indian Government and Punjab state on the other. The countermeasures taken by the law enforcement authorities resulted in hundreds of additional deaths. Several thousand people, including Sikh militants and uninvolved persons from all religious groups as well as government officials, died during the extended period of confrontation in the 1980's and early 1990's." Although the profile states that the number of arrests/killings has declined significantly since late 1993—early 1994, the profile also states that the Indian Human Rights Commission found that "[d]espite this improvement, the authorities continued to commit extrajudicial killings in 1994." The profile also describes the level of violence in the Punjab as only "lower."

Because the record clearly shows the evidence of country conditions is not sufficient to rebut the presumption, remand for a further hearing would not be appropriate. *See Chand v. INS,* 222 F.3d 1066, 1078 (9th Cir.2000). Instead, we remand for the Attorney General to exercise her discretion and determine whether to grant asylum. *See Duarte de Guinac v. INS,* 179 F.3d 1156, 1164 (9th Cir.1999).

### VI.

 With regard to Kataria's claim that he is entitled to withholding of removal, 8 C.F.R. § 208.16(b)(2) (2000) provides:

If the applicant is determined to have suffered persecution in the past such that his or her life or freedom was threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that his or her life or freedom would be threatened on return to that country unless a preponderance of the evidence establishes that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there.

8 C.F.R. § 208.16(b)(2) (2000); *Navas,* 217 F.3d at 657 ("A showing of past persecution gives rise to a presumption that the applicant has shown a clear probability of future persecution so as to entitle him to withholding of deportation.").

Kataria presented evidence, which we must treat as credible, that he suffered past persecution to the extent that his freedom was threatened on account of his political opinion. Indeed, he was arrested on two occasions. On the occasion of his second arrest, he was held in custody by the Indian police for three days, during which he was beaten and tortured with electric shock. Having established this past persecution, Kataria was entitled to the presumption that his freedom would be threatened if he were removed and returned to India. The country conditions profile presented by the INS did not rebut this presumption. Accordingly, Kataria is entitled to have his removal withheld. *See* 8 U.S.C. § 1231(b)(3)(A) ("Attorney General may not remove" any alien if that alien's life or freedom would be threatened); *Navas,* 217 F.3d at 657; *Vallecillo–Castillo v. INS,* 121 F.3d 1237, 1240 (9th Cir.1996).

### VII.

In sum, Kataria is eligible for asylum. We remand that portion of his application to the Attorney General to exercise her discretion in granting or denying asylum. With regard to Kataria's application for withholding of removal, he has established his entitlement to that relief and it shall be granted.

PETITION FOR REVIEW GRANTED; APPLICATION FOR WITHHOLDING OF REMOVAL GRANTED; APPLICATION FOR ASYLUM RE-

MANDED for the exercise of the Attorney General's discretion.