**Yongzhi WANG, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–74089.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 6, 2004.*

Decided June 1, 2004.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Franklin W. Nelson, Esq., Bander Law Firm, San Gabriel, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, James A. Hunolt, Esq., Papu Sandhu, U.S. Department of Justice, Washington, DC, for Respondent.

Before: BROWNING, THOMPSON, and WARDLAW, Circuit Judges.

MEMORANDUM **

Yongzhi Wang, a native and citizen of the People's Republic of China, petitions for review of the Bureau of Immigration Appeals' ("BIA's") final order affirming the Immigration Judge's ("IJ's") decision denying his applications for asylum,[1] withholding of deportation and relief under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and affirm.

"When the BIA adopts an IJ's findings and reasoning, we review the IJ's opinion as if it were the *opinion of the BIA*." *Singh–Kaur v. INS*, 183 F.3d 1147, 1150 (9th Cir.1999). Because the IJ failed to make "an explicit adverse credibility finding, we must assume that Wang's factual contentions are true." *See Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir.2000). Thus, taking Wang's testimony as true, we

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Although Wang's asylum claim would have been pretermitted as filed more than one year

after entry, the IJ allowed Wang's claim to proceed because the Chinese government's 1999 ban on the practice of Falun Gong constituted a sufficiently changed circumstance. *See* 8 U.S.C. § 1158(a)(2)(B), (D).

review the IJ's decision to deny asylum under the substantial evidence standard, and may reverse it only if the evidence presented is such that a reasonable factfinder would be compelled to conclude that the requisite fear of persecution exists. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

■ The IJ's findings that neither a single incident or cumulative incidents rose to the level of past persecution are supported by substantial evidence. *See Avetova–Elisseva v. INS,* 213 F.3d 1192, 1197 ("[I]ncidents of hostility alone do not amount to [past] 'persecution' ... within the meaning of the statute."). Although both Wang and his wife had been fired from their jobs for practicing Falun Gong, Wang failed to establish the severity of the economic deprivation he suffered. *See Ubau–Marenco v. INS,* 67 F.3d 750, 755 (9th Cir.1995), *overruled on other grounds by Fisher v. INS,* 79 F.3d 955 (9th Cir. 1996); *see also Kovac v. INS,* 79 F.3d 908 (9th Cir.1969). Because Wang left China three months after he was fired, there was no evidence that Wang could not have obtained alternate employment. Moreover, his wife remained in their home and their son was able to attend school, albeit a lesser one than he would have attended had the Wangs not been Falun Gong practitioners. Additionally, Wang failed to provide specific testimony about the weekly interrogation sessions that he attended that could have elevated this harassment to the level of persecution.

■ Because Wang did not establish past persecution, he was not entitled to a presumption of future persecution. The IJ's finding that Wang did not have a well-founded fear of persecution if returned to China is supported by substantial evidence. Wang failed to provide specific and detailed testimony which would establish both a subjective and an objective fear of future persecution. *See Berroteran–Melendez v. INS,* 955 F.2d 1251, 1256 (9th Cir.1992). Wang admitted that he no longer practiced Falun Gong and would not practice if he returned to China as long as the practice there remained illegal. His reason for no longer practicing—a fear of spies in the United States who would report his activities back to the Chinese and cause harm to his family—seems implausible. As the IJ noted, the Chinese government was aware that Wang's wife was a former Falun Gong practitioner. Although she had lost her job, she remained in the family home and had not been physically harmed. Furthermore, the IJ found that if Wang was truly fearful that spies in the United States could harm his family in China, Wang would never be able to practice Falun Gong even if granted asylum.

Based on Wang's abstract testimony about his involvement with Falun Gong, coupled with his implausible reason for not practicing Falun Gong in the United States and lack of knowledge of and attachment to its principles, the IJ concluded that Wang was not a true follower of the movement. Even if he had been from 1994–1998, the State Department's 1999 Country Reports on Human Rights Practices for China indicates that the Chinese government persecutes those who publicly protest the ban on Falun Gong, the movement's leaders, and individuals who continue to practice Falun Gong and refuse to recant their beliefs. Thus, because Wang testified he will not practice Falun Gong as long as it remains illegal, the IJ found that his return to China poses no risk to his safety.

Because Wang failed to establish a well-founded fear of persecution on account of religion or political opinion, the IJ properly found that he could not meet the more stringent standard for withholding of de-

portation. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Astrero v. INS,* 104 F.3d 264, 265 (9th Cir.1996).

Finally, the IJ found that Wang presented no evidence which established that it would be more likely than not that he would be tortured upon return to China. *See* 8 C.F.R. § 208.16(b)(2); *Kamalthas v. INS,* 251 F.3d 1279, 1283 (9th Cir.2000). Thus, substantial evidence supports the IJ's decision to deny Wang relief under the Convention Against Torture. *See Zheng v. Ashcroft,* 332 F.3d 1186, 1193 (9th Cir.2003).

**PETITION DENIED.**

Judge BROWNING dissent.

BROWNING, Judge.

Even assuming Wang did not make out a case of past persecution, there is ample evidence that he has a well-founded fear of future persecution and is therefore eligible for asylum.

**I**

We review the IJ's factual findings under the substantial evidence standard. *See Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir.2001). To qualify for asylum, an applicant must show that his or her fear of persecution is well-founded. A well-founded fear must be subjectively genuine and objectively reasonable. *See Blanco–Comarribas v. INS,* 830 F.2d 1039, 1042 (9th Cir.1987). An asylum applicant's "candid, credible, and sincere testimony" demonstrating a genuine fear of persecution satisfies the subjective component of the well-founded fear standard. *Id.* The objective component requires "credible, direct and specific evidence in the record, of facts that would support a *reasonable* fear that the petitioner faces persecution." *Rodriguez–Rivera v. INS,* 848 F.2d 998,

1002 (9th Cir.1988) (emphasis in original). "[E]ven a ten percent chance of persecution may establish a well-founded fear." *Al–Harbi v. INS,* 242 F.3d 882, 888 (9th Cir.2001).

The majority contends that "Wang failed to provide specific and detailed testimony which would establish both a subjective and objective fear of future persecution." Regarding the subjective component, Wang testified that he could not go back to China because he would be persecuted. He testified that he thinks he would be arrested and sent to a labor reform camp if returned to China, because the police have already been to his house to attempt to arrest him. Wang also swore that three of his former Falun Gong group members have been arrested and sentenced to three years of labor reformation, and that he is afraid that the same will happen to him. There is no question that Wang has demonstrated a subjectively genuine fear of persecution.

Wang also satisfied the objective component by providing clearly sufficient evidence of a reasonable fear that he would face persecution if returned to China. As the majority points out, because the IJ did not make an explicit adverse credibility finding, we assume that Wang's factual contentions are true. *See Kataria v. INS,* 232 F.3d 1107, 1114 (9th Cir.2000). We therefore accept as true that Wang began practicing Falun Gong in 1994, very early in the movement, and became the leader of his group. Wang was demoted, suspended, and ultimately fired from his government job because of his practice of Falun Gong. Wang was regularly interrogated, and his family was put under surveillance. His wife was fired from her job because of her practice of Falun Gong, and his son was forced to transfer to an inferior school. Neither Wang nor his wife were able to find other jobs. Because of these circum-

stances, Wang came to the United States in July 1998.

Wang left China when the practice of Falun Gong was only beginning to meet stiff resistance. A year after his departure, the Chinese government banned the practice of Falun Gong, declared it to be an illegal cult, and escalated its persecution of practitioners. It does not appear that the IJ took account of the increased risk faced by Falun Gong practitioners after the practice was outlawed. The State Department Country Reports for 1999 and 2000 indicate that thousands of Falun Gong practitioners have been detained in reeducation-through-labor camps for up to 3 years—without trial—while others have been confined to psychiatric hospitals. Many of the leaders of the movement have been arrested, tried, and convicted under the anti-cult law, and have been sentenced to long prison terms. There have been numerous reports of abuse of practitioners by police and security personnel, including beatings and torture. A number of practitioners have reportedly died while in detention.

Wang himself was targeted by Chinese authorities. His house was searched, and Falun Gong-related books and materials were confiscated. His family was ordered to attend a reeducation course, and when Wang did not attend, local police came to his house to arrest him. The Country Reports indicate that "those identified by the Government as 'core leaders' were singled out for particularly harsh treatment." As a longtime practitioner and former local group leader, Wang is likely to be targeted if he returns.

## II

The IJ concluded that only devout or "active" Falun Gong practitioners are at risk of persecution in China. He also concluded that Wang was neither devout nor

active. Therefore, he held that Wang was not at risk of persecution if returned to China, and was therefore not eligible for asylum. The IJ's reasoning is not supported by the record.

### A

The IJ mischaracterized the information provided in the Country Reports. He claimed that, according to the Country Reports, the only Falun Gong practitioners at risk were "those who were active followers and active practitioners," and that Wang was therefore not at risk. Even assuming *arguendo* that Wang is not currently an "active" practitioner, the IJ's conclusion is not supported by the Country Reports. The Country Reports do state that many detainees who recanted their beliefs were subsequently released, but they do *not* indicate that *only* "active" practitioners are at risk of persecution. In fact, there is no discussion of whether most of the thousands of individuals who have been imprisoned, beaten, and tortured had been openly practicing or not, or whether that even mattered to the Chinese government.

However, the Country Reports do indicate that Falun Gong leaders—like Wang—have been the most frequent targets of persecution. Because the Chinese government already knows about Wang's past involvement with Falun Gong and subjected him to harsh treatment even before the ban, the IJ's conclusion that Wang is not at risk of persecution because he is not "active" is unsupported.

### B

The IJ based his finding that Wang was not a devout member of Falun Gong on the "ever so general testimony from [Wang] about his actual involvement in the movement," along with the "unreasonable reason why he does not practice the teachings

of Falun Gong in the United States." The majority accepts the IJ's findings, describing Wang's testimony about his involvement with Falun Gong as "abstract," and his reason for not having practiced in the United States as "implausible." Yet Wang provided detailed testimony about his practice of Falun Gong, including his role as leader of his practice group. He included explanations of the specific exercises he performed and discussed the influences of Buddhism and Taoism on Falun Gong. He even offered to demonstrate the Falun Gong exercises and provide more detail if the IJ could be more specific in his questioning, but the IJ declined his offer. Blame for any lack of testimony regarding Wang's devotion to Falun Gong cannot fall on Wang. He answered the questions presented to him, and provided detailed information on his practice of Falun Gong. The IJ should not have determined that Wang is not a devoted practitioner of Falun Gong solely because he did not provide a specific and detailed answer to a question never posed to him during the hearing. *Cf. Guo v. Ashcroft*, 361 F.3d 1194 (9th Cir.2004) ("[U]nclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony."); *Qiu v. Ashcroft*, 329 F.3d 140, 152 n. 6 (2d Cir.2003) (stating that "if the INS or IJ has nagging doubts about an applicant's credibility due to the spareness of her testimony ... it would seem prudent for the INS or IJ to pose questions aimed at eliciting inconsistent or inherently implausible statements.").

Moreover, because the IJ did not make an explicit adverse credibility determination, we must accept as true Wang's testimony that he practiced Falun Gong every morning for four years, eventually becoming the leader of his group of approximately 30–40 individuals. He also continued to practice despite losing his job, being interrogated, and being put under surveillance because of his practice of Falun Gong. That alone shows Wang to be a devout practitioner.

The IJ found "unreasonable" Wang's testimony that he had not been practicing Falun Gong openly in the United States because he was told that there are "spies" who would report him. Yet it is not implausible that a man who has been forced to leave his family, friends, and home country behind because of his practice of Falun Gong would be anxious about drawing attention to himself. The Country Reports also indicate that those fears were not far-fetched. They report that Falun Gong practitioners living abroad may have been detected and contacted by Chinese authorities: an attack on a foreign-based Falun Gong website was traced to Chinese government security departments, and there have been reports that Falun Gong practitioners living outside China have received virus-infested emails.

Questioning Wang's devotion to Falun Gong simply because he had not practiced openly for a short period of time also demonstrates the IJ's misunderstanding of Falun Gong practice. It is true that being a member of Falun Gong involves performing certain physical movements, but there is also an underlying philosophy and set of beliefs that draw from Buddhism and Taoism. Performing the physical movements of Falun Gong is simply one part of the broader spiritual practice. One may be a devout member of Falun Gong even though circumstances do not permit performance of the exercises, just as one may be a devout Christian even though circumstances do not always allow attendance at church services. Indeed, Wang testified that although he did not feel that he could perform the exercises safely, he was continuing his spiritual practice. It is therefore unreasonable for the IJ to determine

that Wang is not a devout practitioner of Falun Gong because he did not practice openly when he came to the United States.

## III

In supporting its affirmance of the IJ's decision, the majority distorts Wang's testimony by concluding that "because Wang testified that he will not practice Falun Gong as long as it remains illegal ... his return to China poses no risk to his safety." To the contrary, Wang testified that he would like to, and will, continue practicing if he is forced to return to China. Yet the majority seizes on his testimony that "[i]f they do not crack down on Falun Gong and announce it to be an illegal organization, I will keep on practicing because it is good for my health." From this statement—a translation of Wang's testimony in Chinese—the majority infers that Wang will not continue to practice Falun Gong if returned to China. However, examining Wang's statement in the context of the rest of his testimony demonstrates that this was an isolated statement that is contradicted by the rest of his testimony. Wang demonstrated in several other parts of his testimony that he knew the Chinese government had outlawed Falun Gong and, of course, he fled the country because of the government's crackdown on Falun Gong practitioners. Thus it appears that the majority's conclusion that Wang would not continue practicing was based on an inference drawn from either a mistranslation of Wang's testimony or a misunderstanding of the question by Wang. In either case, it was contradicted by Wang's direct testimony and thus the weight placed on that conclusion is unwarranted.

Even if it were true that Wang does not intend to continue practicing Falun Gong if he is returned to China, and would be willing to recant his beliefs, this court has made it clear in a long line of cases that, when facing persecution, the applicant need not hold the beliefs or opinions that are ascribed to him. *See, e.g., Mejia v. Ashcroft,* 298 F.3d 873, 877 (9th Cir.2002) ("A person has a well-founded fear of persecution on account of political opinion if his fear is on account of an imputed political opinion, i.e. a political opinion that he does not necessarily hold but that his persecutors believe that he holds."). Thus, because the Chinese government has already identified Wang as one of the early practitioners of Falun Gong, and that places him at great risk of suffering persecution, whether he continues to practice or not is of little relevance.

Even if Wang was willing to recant his beliefs and doing so would ensure his safety, the majority would apparently require him to repudiate his practice of Falun Gong in order to avoid extended detainment, reeducation, beating, or torture. This is an alarming holding, and one clearly contrary to the design and purpose of our asylum laws. Of course any asylum-seeker claiming under a non-immutable basis, such as religious practice or political affiliation, could simply be expected to renounce that practice or affiliation in order to avoid persecution. But at the heart of United States asylum law is the protection of refugees from that sort of oppression. *See, e.g., Desir v. Ilchert,* 840 F.2d 723, 727 (9th Cir.1988) (holding that persecution includes "oppression which is inflicted on groups or individuals because of a difference that the persecutor will not tolerate").

The Third Circuit has allowed for the possibility that "the concept of persecution is broad enough to include governmental measures that compel an individual to engage in conduct that is not physically painful or harmful but is abhorrent to that individual's deepest beliefs." *Fatin v. INS,* 12 F.3d 1233, 1242 (3d Cir.1993). The court continued: "An example of such

conduct might be requiring a person to renounce his or her religious beliefs...." *Id.* While it is debatable whether Falun Gong should be considered a religion, Wang spent several years of his life engaged in the practice and beliefs of Falun Gong. He developed a strong commitment to it, and wishes to continue practicing. Even if it were true that Wang could avoid persecution by renouncing those beliefs, this court should not put him in a position where he has to choose between foregoing the basis of his asylum claim and facing persecution.

## IV

While we are deferential to the IJ's decision under the substantial evidence standard, this standard of review also requires that we review the record as a whole, weighing both the evidence that supports the IJ's determination as well as the evidence that detracts from it. *See Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). In my view, the IJ's decision to deny asylum is not supported by substantial evidence. Accordingly, I would hold that Wang has demonstrated a well-founded fear that he would be persecuted if returned to China, and that he is eligible for asylum.