FILED

NOT FOR PUBLICATION

NOV 13 2009

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| VIOREL PLESEA; CLAUDIA RAHELA PLESEA, | No. 05-73300 |
| Petitioners, | Agency Nos. A077-051-141 |
|  | A077-051-142 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 17, 2009
San Francisco, California

Before: SCHROEDER, REINHARDT and BEA, Circuit Judges.

Viorel Plesea, a native and citizen of Romania, petitions for review of a

decision of the Board of Immigration Appeals ("BIA") affirming the

determinations of an immigration judge ("IJ") that Plesea is ineligible for asylum,

---

        *     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

withholding of removal, and relief under the Convention Against Torture.  Plesea's wife, Claudia Plesea, also seeks status as a derivative beneficiary.

The IJ determined that Plesea was not statutorily eligible for asylum because he failed to show that his application was filed within one year of his entry into the United States and because he failed to rebut the presumption that he had firmly resettled in Italy before coming to the United States.  The IJ then found that, even if the timeliness and firm resettlement bars did not apply, Plesea failed to meet his evidentiary burden of proving persecution.  The IJ determined that Plesea had failed to testify credibly, but went on to conclude that, even if Plesea was credible, his testimony did not establish that he had suffered past persecution or had a well-founded fear of future persecution on account of a protected ground.  Finally, the IJ denied Plesea's applications for withholding of removal and relief under the Convention Against Torture ("CAT").

The BIA affirmed the IJ's decision that Plesea did not establish that he had suffered past persecution and, therefore, was not entitled to a presumption of future persecution.  The BIA expressly declined to reach the IJ's findings that Plesea's application was not timely and that he was not credible.  However, even though the BIA's decision did not mention the IJ's finding that Plesea had firmly resettled in Italy, the BIA affirmed that finding when it cited *Matter of Burbano*, 20 I. & N.

Dec. 872, 874 (BIA 1994). *See Abebe v. Gonzalez*, 432 F.3d 1037, 1040 (9th Cir. 2005) (en banc) (holding that the BIA adopts the IJ's entire decision when it cites *Burbano* and expresses no disagreement with the IJ's decision). The BIA also affirmed the IJ's denial of Plesea's application for withholding of removal and relief under the Convention Against Torture.

Where the BIA makes no adverse credibility finding, we must deem the petitioner credible. *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir. 2000). Thus, we must determine whether Plesea's testimony, if credible, compels a finding of past persecution.

Plesea testified that he suffered two violent attacks in 1998 on account of his religious proselytizing as a member of the Seventh Day Adventist Reform Movement Church. In February 1998, as Plesea was going door-to-door in the village of Tataran promoting his faith, he was surrounded by a group leaving the Orthodox church. Members of the group threw him to the ground, kicked him, and stabbed him in the back. He lost consciousness as a result of a blow to his head. Just before he passed out, someone grabbed his arm and tried to slash his wrist. Claudia Plesea testified that she found her husband in a ditch covered in blood. Viorel Plesea testified that he still bore scars from these wounds and submitted doctors' reports confirming the injuries to his wrist and back. When Plesea

3

attempted to report the episode to the police, he was mockingly told to seek relief in Strasbourg, which is the seat of the European Court of Human Rights.

Plesea further testified that later that year, in August, the police detained him for his religious activities in his home city of Ploiesti. The police physically abused him and threatened him with arrest if he did not cease proselytizing. The Pleseas subsequently left Romania.

The cumulative evidence in the record, if we assume it is credible, compels the conclusion that Plesea suffered past persecution on account of his religious beliefs. *See Korablina v. INS,* 158 F.3d 1038, 1045 (9th Cir. 1998) (holding that facts compelled finding of persecution where record showed cumulative, specific instances of violence and harassment on account of religion). The police officers' mockery and their subsequent detention and beating of Plesea also demonstrate that the government was unwilling to control the elements of Romanian society that were intolerant of Plesea and his religious beliefs. *See Singh v. INS*, 94 F.3d 1353, 1360 (9th Cir. 1996). Thus, we must reverse the BIA's finding regarding persecution for the reasons explained above and remand for further proceedings.

We also reverse the BIA's finding that Plesea firmly resettled in Italy, because the government adduced no evidence of Plesea's right to stay in Italy. *See Maharaj v. Gonzales*, 450 F.3d 961, 976 (9th Cir. 2006) (en banc) (holding that the

4

government bears the initial burden of producing evidence that a third country offered the applicant "some type of permanent resettlement" or evidence "[a] third country officially sanction[ed] the alien's indefinite presence").

We express no opinion as to whether the BIA erred when it affirmed the IJ's denial of Plesea's application for withholding of removal and relief under the CAT. However, the evidence that was sufficient to establish past persecution and a well-founded fear of persecution, assuming it is credible, is also relevant to withholding of removal and relief under the CAT. Thus, we remand these issues to the BIA.

**PETITION FOR REVIEW GRANTED IN PART and DENIED IN PART.**