CALLAHAN, Circuit Judge,
concurring and dissenting:
Monsuru Olasumbo Tijani, a native and citizen of Nigeria, has been convicted on four separate occasions for crimes of dishonesty and financial fraud: in 1986 for perjury, in 1987 for passing fraudulent checks, in 1991 for providing false information to obtain credit cards in violation of California Penal Code § 532, and in 1999 on twelve counts of again violating § 532(a)(1) by providing false information to obtain credit cards and using the cards to obtain goods. The government, most reasonably, seeks to remove Tijani to Nigeria. I would affirm the decision by the Board of Immigration Appeals (“BIA”) to deny Tijani relief.
I agree with Judge Noonan that Tijani was convicted of a crime involving moral turpitude.[1] I also agree, albeit for slightly different reasons than expressed by Judge Noonan, that our opinion in Marmolejo-Campos v. Holder, 558 F.3d 903 (9th Cir. 2009) (en banc) does not require that we direct the BIA to adhere to its decision in In re Kinney, 10 I. & N. Dec. 548 (1964).[2]
*1086 However, I do not agree that because the Immigration Judge (“IJ”) may not have explicitly stated that Tijani was not credible, Tijani must be presumed to be credible, or that the IJ could not require that Tijani corroborate his unsupported testimony. At the very least, my colleagues needlessly prolong Tijani’s removal proceedings. The greater harm, however, lies in their reliance on technicalities to overcome the reality of the situation and to defeat the purpose and letter of our precedents.
Because Judge Noonan and I agree that Tijani is removable, Tijani would only be entitled to relief if he made the requisite showings for asylum, withholding of removal, or protection against torture. However, Tijani’s eligibility for these forms of relief depends on his credibility. I read the record to show that the IJ held that Tijani was not credible and to contain substantial evidence supporting that determination. Moreover, the IJ properly held that Tijani had not carried his burden to show eligibility for asylum, withholding of removal, or protection against torture because he failed to proffer any evidence to support his incredible testimony.
A. The Immigration Judge’s Opinion
The best evidence that the IJ found that Tijani was not credible is the IJ’s decision. The IJ wrote:
The respondent was admitted into the United States in 1985. The court finds the situation with the respondent analogous to that of the boy who cried wolf. In 1986 the respondent was convicted of perjury. Perjury is a crime under Section 118 of the California Penal Code, which is essentially a crime for lying. In 1986 when the respondent in essence cried wolf a Judge in a court found that he did in fact lie and he was convicted and sentenee[d] to 36 months probation. At the same time the respondent indicated his willingness to violate law and his lack of character by also being convicted of grand theft. As mentioned above, it is not clear whether the respondent has two perjury convictions or one perjury conviction, two grand theft convictions or one. It is respondent’s burden of proof.
In 1987 the respondent was convicted of insufficient funds under Section 476A. This is the seeond time the respondent cried wolf. Again, a Judge was called upon to determine whether the respondent’s statements were time or not. The respondent wrote a check representing that he had funds in an account necessary to cover the expenses. He knowingly did not have the funds and therefore he was sentenced to 16 months in prison. This is the second time a Judge has found the respondent has not told the truth.
In 1989 the respondent was in removal proceedings by the foreign Immigration Judge. The respondent submitted or had submitted on his behalf by his legal representative, who he was friendly enough with to attend church together, a letter to the Judge. The letter to the Judge is from a pastor. The letter represents that the respondent is a Christian and that he provided numerous dedicated services. The letter represents that respondent attended the *1087 church for two years. The letter provided the respondent had become a member of that church. The respondent now testifies that this letter that was sent to the Judge on his behalf is a lie. The respondent represents how that letter was written and he does not recall having seen the letter.
In 1991 the respondent picked up a conviction for filing financial statements. In this case the respondent lied, used a fictitious name, fictitious social security number, fictitious business name and business address and falsely represented himself to be another person. In essence the respondent lied about his own identity. The respondent did so in such a manner that it was relied upon by Sears to extend benefits to him for which he was not entitled. This is the third time the respondent cried wolf. Again, a Judge was called upon and found that the respondent had in fact lied and the cry of wolf was not true. The Judge, as a result, sentenced the respondent to two years, 4 months in prison. 16 months for the lie and 1 year for the prior lies. Exhibit 3 reflects the respondent has another conviction, on January 23, 1992 in Santa Barbara, California for false financial statements. This was found to be the basis to sustain a one year prison enhancement. This is another instance, and in fact the fourth in the United States, where the respondent cried wolf and a Judge was called upon and determined that the respondent had lied again and this time the respondent was given appropriate sanctions.
The respondent is now in front of me on 12 counts of again lying. The respondent was convicted in 1999 on 12 different counts of filing false financial statements. These lies occurred between 1996 and 1998. This is another 12 instances where the respondent cries wolf. And each time the Court and a ■ Judge is required to come in and in each of these 12 instances that were alleged, the Judge found that the respondent had lied and this time imposed 9 years in prison.
The respondent in front of me has testified in 1994 he was in college and that he decided to convert to Christianity. The respondent acknowledges that the Christian faith has as one of its [tenets, thou] shall not steal. The respondent based upon the record has committed numerous offenses of this section. The Court finds that this, at a minimum draws into question whether the respondent holds this faith. The Court also find[s] the fact that the respondent previously has been in front of an immigration judge and someone on behalf of the respondent has submitted a very detailed letter written directly to the Judge saying the respondent had been a Christian and part of the Christian sect of Brotherhood of the Cross and Star [in] 1999 [sic]. Accordingly take notice, Judge Peters granted the respondent relief on May 12, 1989. The case before Judge Peters began in 1987. The respondent, however, distances himself from this letter saying he does not recall it and that it is not true. If it is not respondent in this case who is not telling the truth, someone is submitting lies to the Judge on his behalf.
Now the respondent is coming before this Court. The respondent is requesting asylum in the United States. Although the respondent or someone in his behalf testified that he became a Christian in 1987 and submitted details regarding his practice and church attendance as well as his character during the two year period of [1987 to 1989] when he was allegedly a member of this Christian sect of Brotherhood of the Cross and Star. Respondent has testified to the contrary today that he did not be *1088 come a Christian until 1994 when he was in college.
The respondent is claiming that he would be persecuted and tortured upon return to Nigeria because of the fact that he [has] changed his religion. This time the respondent is not crying wolf. Instead on this occasion the respondent is crying an alligator is present. The respondent would like the United States and its Government to run and give him the necessary relief and believe him. The Court, however, finds that after a conviction for perjury, after false statements have been submitted to an Immigration Judge regarding the respondent in the past, the fact that the record contains conflicting evidence as to when the respondent did become [a] Christian, even if [he] did and based upon this case that the Court has reason not to believe the respondent this time. The 9th Circuit Court of Appeals has held that it is not necessary to corroborate one[’s] testimony if it is specific, credible and direct. This Court, however, finds for the reasons set forth above that there are a number of deficiencies in the respondent’s testimony. The Court also finds that when the little boy comes 16 times and cries wolf and each time it is verified beyond a doubt that he is telling a lie, the 17th time that he cries [that] he is afraid of an alligator, that it is reasonable for the trier [of] fact, in this case myself, not to [believe] him. This Court is not going to specifically find for the record that the respondent is not credible because the Court cannot point to a single inconsistency in the record other than the fact that the respondent claims that in 1994 he was a Christian, although it appears that it has been represented to an Immigration Judge before, that occurred in 1987. But the Court finds based upon the respondent’s past lengthy detailed record of lying in this country, which has occurred on [a] continuous and regular basis that the words of this respondent simply deserve no weight. This Court is not, after 16 occasions of crying wolf, going to believe the respondent at this time when he claims a different harm that necessitating asylum without requiring some type of corroboration. In essence what the Court is saying then is while it cannot find an inconsistency in the respondent’s testimony at this time to say that he is not credible, it finds that the weight of his words is not sufficient to carry his burden of proving eligibility for asylum. If the boy comes and claims alligator, this Court cannot say that after 16 prior lies that there is any way to deem the statement there is an alligator to be inconsistent. The Court, however, finds that the weight of those words, there is an alligator after 16 occasions of finding beyond a doubt that there is [a] lie sufficient to say to the boy well if there is an alligator this time, you need to prove it to me and demonstrate that your words are true. The Court simply finds that the respondent has not done so and has failed to meet his burden of proof.
B. The IJ adequately explained his determination that Tijani was not credible
Even though the IJ’s perspective is certainly reasonable, if not compelling, my colleagues read the IJ’s decision as insufficiently explicit to be a credibility determination. As authority they cite the statement in Mansour v. Ashcroft, 390 F.3d 667, 671 (9th Cir.2004), that the Ninth Circuit “does not permit implicit adverse credibility determinations.”
First, there is nothing implicit about the IJ’s determination. He finds that because Tijani has been found by judges to have lied on 16 prior occasions, he is not credi *1089 ble. The IJ concluded that “based upon the respondent’s past lengthy detailed record of lying in this country, which has occurred on a continuous and regular basis that the words of this respondent simply deserve no weight.” Perhaps if the IJ had said no more, he would have been affirmed. The IJ, however, admitted that on Tijani’s seventeenth incredible claim, the only specific inconsistency he found was Tijani’s prior representation (on which he was granted relief) that he had converted to Christianity in 1987 or 1988, rather than 1994, as he now claims. This too should be enough to deny Tijani relief. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (“To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it.”) (emphasis in original). The majority opinion, however, seems to hold that because the IJ fails to find a more specific inconsistency in Tijani’s claim of religious persecution in Nigeria, we are bound by our precedent to accept Tijani’s representations as true. In other words, if an applicant spins a sufficiently clever yarn for which there is no direct contrary evidence, it must be accepted as true.[3] I do not read our precedent as compelling this conclusion.
Admittedly, our opinions have not been a model of clarity or consistency. In Jibril v. Gonzales, 423 F.3d 1129, 1135 (9th Cir.2005), we explained:
Under our case law, testimony that is “implausible in light of the background evidence,” Chebchoub v. INS, 257 F.3d 1038, 1043 (9th Cir.2001) (emphasis added), can support an adverse credibility finding. For example, a finding made by an IJ that a petitioner’s testimony is implausible given the evidence in a Country Report or other objective evidence in the record is accorded deference. However, when an IJ finds a petitioner’s testimony implausible based solely on “conjecture and speculation” that the testimony, though uncontroverted by any evidence that the IJ can point to in the record, is inherently unbelievable, then that “finding” should not automatically be accorded deference. See Vera-Villegas v. INS, 330 F.3d 1222, 1231 (9th Cir.2003) (“The IJ’s view was based on mere speculation and conjecture, and ... conjecture is not a substitute for substantial evidence.”) (quotation marks omitted).
Although “speculation and conjecture” alone cannot sustain an adverse credibility finding, an IJ must be allowed to *1090 exercise common sense in rejecting a petitioner’s testimony even if the IJ cannot point to specific, contrary evidence in the record to refute it. Without such latitude, IJs would be bound to credit even the most outlandish testimony as long as it was internally consistent and not contradicted by independent evidence in the record. Unfortunately, a survey of our precedent reveals no consistent line that has been drawn between an IJ’s legitimate application of common sense, on the one hand, and an IJ’s reliance on “speculation or conjecture” in determining that a fact alleged by a petitioner is implausible on the other.
It appears that a critical line regarding deference to an IJ’s determination that an applicant is not credible is whether the determination is based on “speculation or conjecture” or on compelling background evidence. In Mansour, we declined to defer to the IJ’s ambiguous adverse credibility determination because it was based on concerns as to inconsistencies in the evidence and questions as to whether the petitioner had provided false information.[4] Mansour, 390 F.3d at 671. Similarly, in Kataria v. INS, 232 F.3d 1107, 1111-13 (9th Cir.2000), the IJ did not make an explicit adverse credibility determination, but expressed concerns about mistakes in Kataria’s application and inconsistencies in the evidence concerning his religion and where he lived, which he failed to address by submitting supporting evidence.
In the case at bar, the IJ was not concerned so much with inconsistencies in Tijani’s actual testimony or mistakes in his application but with the facts that: (1) on numerous prior occasions, Tijani had been judicially determined to have lied and had been criminally convicted for his lies; and (2) Tijani testified that he had not converted to Christianity until 1994 although in 1989, a prior IJ had granted Tijani adjustment of status based on his representation that he had converted to Christianity in 1987. This irrefutable “background” information suggests that no fact-finder should be compelled to accept Tijani’s unsupported testimony as true.
C. The IJ properly denied Tijani relief because he failed to proffer any corroborative evidence
I do not read our precedent as prohibiting the IJ in this case, where substantial evidence undermined the petitioner’s credibility, from requiring that Tijani provide supporting evidence of his claim of religious persecution. Our rule is that “the BIA may not require independent corroborative evidence from an asylum applicant who testifies credibly in support of his application.” Kataria, 232 F.3d at 1113. This rule, however, turns on a determination that an applicant’s testimony is credible. We explained in Chebchoub:
“Because asylum cases are inherently difficult to prove, an applicant may establish his case through his own testimony alone.” ... That is, Chebchoub’s testimony, if credible, may be sufficient to sustain his burden of proof without corroboration.... However, 8 C.F.R. § 208.13 plainly indicates that if the trier of fact either does not believe the applicant or does not know what to believe, the applicant’s failure to corroborate his testimony can be fatal to his asylum application. Thus, the regulations unambiguously contemplate cases where an applicant’s testimony alone will not satisfy his burden of proof.
257 F.3d at 1042 (internal citations omitted).
*1091 This case presents an instance where an applicant, who has been criminally convicted at least three times for lying, seeks asylum on the basis of his testimony alleging religious persecution which is inconsistent with the position he successfully presented to an IJ ten years earlier and for which he offers no corroborative evidence. Under these relatively unique circumstances, the IJ could not know “what to believe,” and thus, even if not compelled to request corroborative evidence, cannot be faulted for doing so.
Finally, I note that our rulings that an IJ must make an explicit adverse credibility determination and that credible evidence may be sufficient to support an asylum claim are based on sound concerns that are not applicable here. The IJ’s determination that Tijani is not credible was not based on speculation or conjecture,[5] nor did the request for corroborating evidence seek information that was presumptively beyond Tijani’s reach.[6] Instead, the IJ simply refused to accept the unsupported testimony of an applicant who has several criminal convictions for lying and who proffered a claim of religious persecution that was inconsistent with the claim he had presented to an IJ ten years earlier. Because Tijani’s unsupported testimony was not entitled to any presumption of credibility, I would find that the IJ did not err in requiring that he produce some corroborative evidence.
This case tests the extremes to which our precedent can be stretched. My colleagues appear to reason that because the *1092 IJ’s adverse credibility determination was not sufficiently explicit, Tijani’s testimony must be taken as true, and that because his testimony must be accepted as true, the IJ could not require corroborative evidence. In other words, contrary to the fable, in the Ninth Circuit, it does not matter how often an asylum applicant cries wolf, each new cry for relief must be treated as true because to do otherwise is arguably speculative and conjectural.[7] Even assuming that our precedent could be stretched to this point, I dissent because it should not be.
D. Conclusion
Tijani has been convicted of four crimes since he came to the United States. After the first two, he prevailed upon an IJ to grant him a waiver of deportation because he had converted to Christianity and feared persecution if he returned to Nigeria. Tijani continued to commit frauds and after two more convictions, the government again sought his removal to Nigeria. Tijani now claims, based only on his unsupported testimony, that he became a Christian in 1994, and that when he visited his mother in Nigeria in 1995 and told her he had converted to Christianity, he was attacked and injured by “a group of Sharia police officers and regular civil police officers.” I agree with the IJ that Tijani’s record of lying to the courts in this country coupled with his revision of when he allegedly became a Christian is sufficient to strip his testimony of any credibility. Accordingly, the IJ properly required Tijani to provide some corroboration of his testimony, and properly denied him relief when he failed to do so. The petition for review should be denied.

. I also agree that neither of Tijani’s due process claims have any merit.

. Even if In re Kinney were not distinguishable as set forth in Judge Noonan's opinion, there are two features of Marmolejo-Campos that render it inapposite to the case at bar. First, the issue is what deference this court should give to an agency decision, not what deference an agency is required to give to its own precedent. See United States v. Mead, *1086 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Second, MarmolejoCampos, like all the other cases following Chevron, recognizes that an agency may develop its positions through a "process of case-by-case adjudication.” 558 F.3d at 908. This process inherently allows for differences over a period of forty-five years. The agency decision-making process envisioned by Congress allows for change over time, and nothing in Chevron or Marmolejo-Campos supports this court insisting that the BIA adhere to a forty-five year old precedent.

. This case presents a similar situation to that to which then Judge, now Chief Judge, Kozinski dissented in Kumar v. Gonzales, 444 F.3d 1043, 1060-61 (9th Cir.2006) (Kozinski, J., dissenting), where he wrote:
The larger problem with the majority’s opinion is its know-it-all approach, an error oft repeated when our circuit reviews immigration cases in which an IJ has made an adverse credibility determination. First, the majority lays out the applicant's story as if it were the gospel truth, making it seem like denial of rehearing will cause a huge miscarriage of justice. Then the majority picks apart the IJ’s findings piece by piece, scrutinizing his every sentence as if it is completely unconnected to the rest of his opinion. Don’t agree with the IJ that the applicant is lying? Not to worry; just label the IJ's finding "speculation and conjecture." ... Finding it difficult to dispute that the applicant is lying? No problem; just label the inconsistencies "minor,” or "merely incidental to [the] asylum claim." ... The net effect is that any asylum applicant who is a skillful enough liar — and many who aren’t — must be believed no matter how implausible or farfetched their story.... It also means that IJs, who are doubtless chary of being vilified by august court of appeals judges, become even more reluctant to make adverse credibility findings, even when they have good reason to believe the asylum applicant is lying,
(footnote and internal citations omitted).

. The panel, however, ultimately found that even accepting Mansour’s testimony as true, lie had not demonstrated past persecution. Mansour, 390 F.3d at 673.

. For example, in Shoafera v. INS, 228 F.3d 1070, 1074 n. 3 (9th Cir.2000), which is cited in Mansour, 390 F.3d at 671, in support of the rule against implied adverse credibility determinations, the court explained:
As we explained in Canjura-Flores v. INS, 784 F.2d 885, 888-89 (9th Cir. 1985), without an adverse credibility finding we accept a petitioner’s testimony as credible because “[a]ny other rule would put us in the position of second-guessing the credibility of the petitioner on appeal when no doubts have been raised by the Immigration Judge or the Board.” Consequently, the IJ "must have 'a legitimate articulable basis to question the petitioner’s credibility,' ” and must express "a specific, cogent reason for any stated disbelief.” Garrovillas [v. INS], 156 F.3d [1010] at 1013 [(9th Cir. 1998)] (emphasis added)____ Indeed, any such reasons for doubting a petitioner's credibility must be "substantial and must bear a legitimate nexus to the finding.” Id. (citation omitted); Akinmade v. INS, 196 F.3d 951, 954 (9th Cir.1999); Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987). “Generalized statements that do not identify specific examples of evasiveness or contradiction in the petitioner's testimony” are insufficient. Garrovillas, 156 F.3d at 1013.
Here, the IJ had "a legitimate articulable basis for questioning” Tijani's credibility, the IJ explicitly stated his reasons, the reasons are substantial, and they bear a legitimate nexus to the IJ's fact-finding mission.

. For example, in Smolniakova v. Gonzales, 422 F.3d 1037, 1047 (9th Cir.2005), we held that the IJ committed legal error in holding that "Smolniakova’s credibility was undermined by her failure to corroborate her testimony about the May 1991 attack with a letter from the stranger who witnessed the assault.” The court held that "it is unreasonable to expect Smolniakova to have obtained a corroborating letter from an unidentified stranger.” Id. Similarly, in Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir. 1984), we held that an applicant cannot be required to present independent corroborative evidence of a specific threat to his life, and concluded that "[ajuthentic refugees rarely are able to offer direct corroboration of specific threats.”
Here, however, the IJ only sought some corroboration of Tijani's claim that he was attacked and injured while visiting his mother in Nigeria because of his conversion to Christianity. The corroboration could have been in the form of a letter or affidavit from his mother or his brother, or hospital records, or even statements from acquaintances that Tijani had the injury when he returned to the United States. Tijani offered no evidence of his claim other than his word, but due to his past misrepresentations, his word is not entitled to any presumption of credibility.

. It should be remembered that in the fable, the last time the boy cried wolf there really was a wolf, but the people ignored the cry. Thus, if those who had heard the call had not discounted the ciy based on past events and had investigated the last cry, the boy might have been saved. The moral, however, is that society does not have any obligation to investigate the unsupported claim of a person who has repeatedly confirmed that he is a liar.