**Hongke ZHANG, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 03–70930.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 25, 2004.*

Filed Nov. 9, 2004.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2).

vention Against Torture ("Convention Against Torture" or "Convention"). We have jurisdiction under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed the IJ's decision without opinion, we review the IJ's decision as the final agency determination. *Khup v. Ashcroft*, 376 F.3d 898, 902 (9th Cir.2004).

Zhang contends that the evidence compels a finding that it is more likely than not that he will be persecuted if returned to China based on his practice of Falun Gong. We agree, and grant the petition for review.

## I. BACKGROUND

Zhang was born in 1962 in Tianjin, China, and worked as a business manager for a government company after graduating from college in 1988. Zhang and his wife married in 1985, and they had a daughter in 1986. Zhang's wife was forced to undergo an abortion in 1988 under China's one-child policy. Zhang testified that his wife's abortion was not related to his decision to leave China in 1996.

Zhang first entered the United States on November 21, 1996, as a non-immigrant employee. Zhang returned to China in April 1997, and July 1997, for month-long visits. During one of these trips home, Zhang's friend introduced him to the meditation practice Falun Gong, claiming that it would improve his spirit and health. Zhang returned to the United States on August 2, 1997, and he has not departed since that time.

The State Department's 2000 Human Rights Report on China ("Country Report"), which is part of the administrative record, describes Falun Gong, also known as "Falun Dafa" or "Wheel of the Law," as a spiritual movement" blend[ing] aspects of Taoism, Buddhism, and the meditation techniques of qigong (a traditional martial art) with the teachings of Li Hongzhi."

Steve W. Baughman, Baughman & Wang, San Francisco, CA, for the petitioner.

John M. McAdams, Jr., Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: SCHROEDER, Chief Judge, GOODWIN, and TASHIMA, Circuit Judges.

**PER CURIAM:**

Hongke Zhang, a native and citizen of the People's Republic of China, seeks review of the decision of the Board of Immigration Appeals ("BIA") summarily affirming the immigration judge's ("IJ") denial of withholding of removal and protection under Article 3 of the United Nations Con-

Zhang stated that the basic principles of Falun Gong are truthfulness, forbearance and benevolence. The Country Report notes that "Falun Gong does not consider itself a religion and has no clergy or formal places of worship," and Zhang testified that Falun Gong is not a political organization or movement.

After returning to the United States in August 1997, Zhang began to explore Falun Gong by reading books and watching videotapes. Zhang learned the five sets of exercises by practicing at home in front of the television. Zhang claims that his practice of Falun Gong improved his health and spirit by alleviating his ulcers, stimulating his appetite, enabling him to quit a 20–year smoking habit, and helping him to be less argumentative. Zhang shared his positive experiences with his family members and friends in China, and they also began to practice Falun Gong.

In April 1999, Zhang's mother informed him that the Chinese authorities arrested his older brother, along with other Falun Gong practitioners, because they participated in a protest against the Tianjin Municipal government. Zhang's brother was given a two-year sentence at a reeducation-through-labor camp, where he continued to be incarcerated at the time of Zhang's immigration hearing in 2001.

As a result of his brother's detention, Zhang's parents participated in the widely-reported April 25, 1999 Falun Gong demonstration in Beijing, where, according to the Country Report, "10,000 Falun Gong adherents ... demonstrated peacefully in front of the Zhongnanhai leadership compound." Zhang sent his parents supporting letters from overseas Falun Gong practitioners, along with media coverage of other Falun Gong protests. In his letters to his parents, Zhang opined that the government was distorting Falun Gong, and he rejected the government's claim that

Falun Gong was wrong. After the Beijing demonstration, the police arrested Zhang's parents and forced them to write self-criticism letters.

According to the Country Report, the Chinese Government officially banned Falun Gong in July 1999, three months after the large Zhongnanhai demonstration. Thus began a "severe political, propaganda, and police campaign against the Falun Gong spiritual movement." As a result of the national crackdown,

> tens of thousands of practitioners were rounded up and detained for several days—often in open stadiums—under poor and overcrowded conditions, with inadequate food, water, and sanitary facilities. Practitioners who refused to renounce their beliefs were expelled from schools or fired from jobs.

Country Report at 26. The government issued a warrant for the arrest of Falun Gong leader Li Hongzhi, and "seized and destroyed Falun Gong literature, and attempted to shut down Falun Gong Internet web sites." Government practitioners were forced to undergo anti-Falun Gong study sessions, and to recant their beliefs. On October 30, 1999, the government labeled Falun Gong an illegal cult under Article 300 of the Criminal Law. According to the Country Report, "cult members who 'disrupt public order' or distribute publications can receive prison terms of 3 to 7 years[, and c]ult leaders and recruiters can be sentenced to 7 years or more in prison." The then President of China Jiang Zemin also "announced that the campaign against the Falun Gong was one of the 'three major political struggles' of 1999." Zhang testified that the Chinese government banned Falun Gong because practitioners do not believe in the principles of Communism, and the authorities feared that adherents would oppose the government.

On November 29, 1999, the police searched Zhang's parents' home, and told them that Zhang had joined an anti-government organization in the United States. The officers informed Zhang's parents that he mailed anti-government materials to China, and they confiscated the Falun Gong materials that Zhang had sent. The authorities also warned Zhang's parents that Zhang must immediately report to the police station upon his return to China. Zhang testified that the police regularly returned to his parents' home, and placed his parents under constant surveillance. The police informed Zhang's parents that the constant home visits were "the benefit of your son practicing Falun Gong in America." Because of the surveillance, Zhang's mother has not been able to practice Falun Gong in the park, or even in her home. Zhang's daughter has also faced discrimination and ridicule at school because of Zhang's Falun Gong membership.

Zhang's parents have warned him not to return home out of fear for his safety. Zhang believes that he would be arrested, detained, sentenced to a labor camp, and physically and mentally abused or tortured, if he returned to China.

## II. Procedural History

Zhang filed an affirmative application for asylum and withholding of removal on October 31, 2000. The government served Zhang with a Notice to Appear on December 26, 2000.

On March 27, 2001, following a hearing on the merits of Zhang's requests for relief, the IJ granted voluntary departure, but denied his applications for asylum, withholding of removal, and Convention Against Torture relief.

The IJ ruled that Zhang was statutorily ineligible for asylum because he did not file his application for asylum within one year after his last arrival in the United States. The IJ also found that Zhang failed to show a material change in circumstances or extraordinary circumstances to justify his late application for asylum.

The IJ denied withholding of removal finding that Zhang failed to meet his burden of showing a clear probability of persecution based on his wife's 1988 abortion, or his practice of Falun Gong. According to the IJ, the Country Report did not establish that "the government is going from pillar to post, home to home, checking out each and every home about Falun Gong followers." The IJ reasoned that because Zhang "practiced Falun Gong in his home in the United States alone, ... there is no reason why he could not do that if he returned to the People's Republic of China." Finally, the IJ found that "[t]he fact that [Zhang's] brother was re-educated does not guarantee that [Zhang] would be persecuted on the standard required for withholding of removal."

The IJ denied Zhang's request for relief under the Convention Against Torture because Zhang had not been harmed, he did not participate in any Falun Gong protests, and his family members have not been tortured.

The BIA affirmed the IJ's decision without opinion on January 31, 2003, and Zhang filed a timely petition for review.

## III. DISCUSSION

■ Because we lack jurisdiction over the IJ's determination that Zhang is ineligible for asylum because he did not apply for asylum within one year after his last arrival in the United States, *see Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir.2001), our review is limited to whether Zhang is eligible for withholding of removal and relief under the Convention Against Torture.

### A. Withholding of Removal

■ In order to qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), Zhang must show that his "life or freedom would be threatened" in China on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Hoque v. Ashcroft*, 367 F.3d 1190, 1194 (9th Cir.2004) (internal quotation marks omitted). This standard of proof requires Zhang to show that it is "more likely than not" that he would be subjected to persecution in his homeland. *See Khup*, 376 F.3d at 905–06 (granting withholding where evidence compelled a finding that the petitioner faced at least a 51 percent chance of religious and political persecution). There is no statutory deadline for bringing a petition for withholding of removal. *El Himri v. Ashcroft*, 378 F.3d 932, 937 (9th Cir.2004).

■ The IJ appeared to question the extent of Zhang's involvement with Falun Gong, noting that the "Court is hard-pressed to make a real credibility finding as far as [Zhang's] true association to Falun Gong." However, the IJ believed that Zhang read about and knew about the practice of Falun Gong, and the IJ did not question the veracity of Zhang's evidence regarding the harm to his family in China. Because the IJ did not make an explicit negative credibility finding, we accept Zhang's testimony and evidence as true. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137–38 (9th Cir.2004) (stating our rule that "implicit credibility observations in passing" do not constitute credibility findings) (internal quotation marks omitted). We review the IJ's factual findings for substantial evidence. *Khup*, 376 F.3d at 902.

■ Our review of the evidence in the record does not support the IJ's conclusion that Zhang failed to meet his burden of proof for withholding of removal. On the basis of the record evidence, we conclude that any reasonable adjudicator would have to conclude that Zhang would face a clear probability of persecution upon return to China, on account of his practice of Falun Gong and his perceived anti-government activities.

First, the persecution and abuse of Zhang's family in China is compelling evidence that Zhang would face similar mistreatment upon return. *See Korablina v. INS*, 158 F.3d 1038, 1046 (9th Cir.1998) (granting withholding where family members were harmed after petitioner's departure); *Ramirez Rivas v. INS*, 899 F.2d 864, 872–73 (9th Cir.1990) (granting withholding where applicant was a member of a persecuted family). Here, Zhang's brother was arrested and sentenced to a reeducation-through-labor camp for his Falun Gong activities. Zhang's parents, who also practiced Falun Gong, were arrested after participating in a Falun Gong demonstration in Beijing, and the authorities forced them to write self-criticism letters. Zhang's parents have been subjected to ongoing house searches and constant surveillance, making them fearful and unable to practice Falun Gong. Zhang is an active practitioner of Falun Gong, and he is responsible for introducing his family to the practice. Accordingly, the treatment of his similarly-situated family members is highly indicative of the abuse that Zhang would encounter upon return.

Second, the authorities have already identified Zhang as an anti-government Falun Gong practitioner, and have demonstrated their continuing interest in him and his family. The police accused Zhang of participating in illegal activities in the United States, blamed him for distributing anti-government materials, and warned Zhang's parents that he must immediately report to the police upon return to China. This evidence of government interest in

Zhang increases his likelihood of future persecution. *See, e.g., Hoxha v. Ashcroft,* 319 F.3d 1179, 1184 (9th Cir.2003) (holding that police summons demonstrated an individualized risk of persecution for purposes of asylum eligibility); *Mendoza Perez v. INS,* 902 F.2d 760, 762 (9th Cir.1990) (granting withholding where applicant received a direct, specific and individual threat from death squad).

Third, the country conditions evidence in the record compels a finding that it is more likely than not that Zhang would be arrested, imprisoned, and abused based on his practice of Falun Gong, and his distribution of Falun Gong materials to family and friends in China. *See Khup,* 376 F.3d at 905–06 (granting withholding based, in part, on the "well-documented history of human rights abuses by the ... government"). The Country Report for 2000 states that China's "poor human rights record worsened, and it continued to commit numerous serious abuses." Violations included "extrajudicial killings, the use of torture, forced confessions, arbitrary arrest and detention, the mistreatment of prisoners, lengthy incommunicado detention, and denial of due process." The authorities regularly monitor telephone, facsimile, and e-mail communications, and domestic and international mail is opened and censored. The Country Report emphasizes the severe and increasingly abusive crackdown on Falun Gong practitioners:

> According to credible estimates, as many as 5,000 Falun Gong practitioners have been sentenced without trial to up to 3 years of reeducation through labor. Human rights organizations estimate that as many as 300 practitioners have been sentenced to prison terms of up to 18 years for their involvement in Falun Gong. According to the Falun Gong, hundreds of its practitioners have been confined in mental hospitals. Police of-

ten used excessive force when detaining peaceful protesters, including some who were elderly or who were accompanied by small children. During the year, there were numerous credible reports of abuse of Falun Gong practitioners by the police and other security personnel, including police involvement in beatings, detention under extremely harsh conditions, and torture (including by electric shock and by having hands and feet shackled and linked with crossed steel chains).... Various sources report that approximately 100 or more Falun Gong adherents died during the year while in police custody; many of their bodies reportedly bore signs of severe beatings and/or torture, or were cremated before relatives could examine them....

Given the widespread and serious abuses of Falun Gong practitioners, as documented in the Country Report, any reasonable fact finder would be compelled to conclude that Zhang faces a clear probability of persecution upon return to China. *See Khup,* 376 F.3d at 905–06.

Finally, we reject the IJ's finding that Zhang could avoid persecution in China by practicing Falun Gong in the privacy of his own home. First, the evidence shows that Zhang's mother can no longer practice Falun Gong in her home as a result of the regular police visits, and her fear that neighbors would report her activities to the authorities. Accordingly, there is no evidence to support the IJ's belief that Zhang would be free from persecution if he practiced Falun Gong in his home.

Second, and more important, to require Zhang to practice his beliefs in secret is contrary to our basic principles of religious freedom and the protection of religious refugees. We recognize that Falun Gong does not consider itself a religion. Nevertheless, the practice is based, in part, on

spiritual or religious principles, and the Chinese authorities have banned Falun Gong as a religious cult. Accordingly, a discussion of religious persecution is relevant to our analysis.

When defining religious persecution, we are guided by the analysis set forth in the Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status,* U.N. Doc. HCR/ IP/ 4/Eng./REV.2 (ed. 1992) (1979) ("UNHCR Handbook"). *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 438–39 & n. 22, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (recognizing that the UNHCR Handbook provides significant guidance in construing the refugee definition). Paragraph 71 of the UNHCR Handbook states:

> The Universal Declaration of Human Rights and the Human Rights Covenant proclaim the right to freedom of thought, conscience, and religion, which right includes the freedom of a person to change his religion and his freedom to manifest it in public or private, in teaching, practice, worship and observance.

The UNHCR Handbook explains that religious persecution may take various forms, including:

> prohibition of membership of a religious community, or worship in private or in public, of religious instruction, or serious measures of discrimination imposed on persons because they practise their religion or belong to a particular religious community.

UNHCR Handbook, para. 72. Moreover, "[a]n individual (or group) may be persecuted on the basis of religion, even if the individual or other members of the group adamantly deny that their belief, identity and/or way of life constitute a 'religion.' " UNHCR Guidelines on International Protection: Religion–Based Refugee Claims under Article 1A(2) of the 1951

Convention and/or the 1967 Protocol relating to the Status of Refugees (HCR/GIP/04/06, 28 April 2004).

We have found persecution on account of religion where a Christian practitioner was arrested, detained, physically abused, and forced to sign an affidavit renouncing his religion, after he participated in illegal religious activities and attempted to stop an officer from removing a cross from a tomb. *See Guo v. Ashcroft,* 361 F.3d 1194, 1203 (9th Cir.2004). We have also noted that the arrest of a family member at church could constitute religious persecution. *See Li v. INS,* 92 F.3d 985, 987 (9th Cir.1996) (noting potential religious persecution claim, but denying petition because the applicant was able to attend church regularly).

The record shows that the government has prohibited the practice of Falun Gong, and that Zhang would be unable to practice Falun Gong in China without harm. Accordingly, Zhang has shown a clear probability of persecution on account of his spiritual and religious beliefs. *See Khup,* 376 F.3d at 905–06.

■ Zhang has also established that the government's crackdown on Falun Gong practitioners is motivated by a perceived anti-government political opinion. *See Sangha v. INS,* 103 F.3d 1482, 1489 (9th Cir.1997) (considering, under the imputed political opinion analysis, "not the persecutor's own political opinions, but rather the political views the persecutor rightly or in error attributes to his victims."). Although Zhang testified that Falun Gong is not a political organization, the authorities explicitly accused Zhang of participating in anti-government activity, and the Chinese President announced that the anti-Falun Gong campaign was a major political struggle. Accordingly, we hold that Zhang is entitled to withholding of removal

on account of imputed political opinion and religion.

## B. Convention Against Torture

As a preliminary matter, the government contends that we lack jurisdiction over Zhang's request for relief under the Convention Against Torture because he failed to exhaust his administrative remedies by raising the issue in his brief to the BIA. We disagree.

The Immigration and Nationality Act provides that we may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The petitioner's failure to raise an issue to the BIA constitutes a failure to exhaust, depriving this court of jurisdiction. *See Vargas v. U.S. Department of Immigration and Naturalization,* 831 F.2d 906, 907–08 (9th Cir.1987). We have recently stated that a general challenge to the IJ's decision is insufficient, and the petitioner must specify the issues appealed. *See Zara v. Ashcroft,* 383 F.3d 927, 930 (9th Cir.2004).

Here, Zhang explicitly mentioned in his brief to the BIA that he was requesting reversal of the IJ's denial of relief under the Convention Against Torture. Zhang's request was sufficient to put the BIA on notice that he was challenging the IJ's Convention determination, and the agency had an opportunity to pass on this issue. *See id.* at 931 (noting that the policy supporting exhaustion "is to give an administrative agency the opportunity to resolve a controversy or correct its own errors before judicial intervention"). Zhang raised the issue of Convention relief before the BIA, and our precedent requires nothing more. *See, e.g., Ladha v. INS,* 215 F.3d 889, 903 (9th Cir.2000) (holding that petitioners exhausted claim by raising it in their notice appeal, even

though it was not discussed in the briefs before the BIA); *cf. Barron v. Ashcroft,* 358 F.3d 674, 676 (9th Cir.2004) (finding failure to exhaust where appeal "nowhere mention[ed]" petitioner's newly-raised due process challenge).

In order to qualify for relief under the Convention Against Torture, Zhang must establish that it is more likely than not that he would be tortured if removed to China. *See Khup,* 376 F.3d at 906. " 'Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.' " *Al–Saher v. INS,* 268 F.3d 1143, 1147 (9th Cir.2001) (quoting 8 C.F.R. § 208.18(a)(2)), *as amended by* 355 F.3d 1140 (9th Cir.2004). Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, …

*Kamalthas v. INS,* 251 F.3d 1279, 1282 (9th Cir.2001) (quoting 8 C.F.R. § 208.18(a)(1) (2000)). Country conditions evidence can play a decisive role in determining eligibility for relief under the Convention. *Id.* at 1282–83. We review the factual findings underlying the IJ's denial of relief under the Convention Against Torture for substantial evidence. *See Zheng v. Ashcroft,* 332 F.3d 1186, 1193 (9th Cir.2003).

Although the evidence in the record compels a finding that it is more likely than not that Zhang will be *persecuted*

upon return to China, the likelihood of future harm amounting to torture is less pronounced. We cannot say on this record that the evidence compels us to find that Zhang meets the clear probability standard. *See Hasan v. Ashcroft,* 380 F.3d 1114, 1122–23 (9th Cir.2004). Accordingly, substantial evidence supports the IJ's determination that Zhang is not eligible for relief under the Convention Against Torture.

## III. CONCLUSION

Compelling evidence establishes that Zhang faces a clear probability of persecution upon return to China on account of his practice of Falun Gong, and we grant his request for withholding of removal. The evidence does not compel a finding that Zhang would be tortured by or with the acquiescence of the Chinese authorities, and we deny his request for relief under the Convention Against Torture.

**PETITION FOR REVIEW GRANTED.**