**Farah SHARIFISABER, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 05–76570.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 27, 2007.*

Filed March 27, 2008.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Ira J. Nasserian, Esq., El Segundo, CA, for Petitioner.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, WWS–District Counsel, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, OIL, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, Frank A. Wilson, AUSA, U.S. Attorney's Office Eastern District of Washington, Spokane, WA, for Respondent.

Before: B. FLETCHER, KLEINFELD, and GOULD, Circuit Judges.

### MEMORANDUM **

Farah Sharifisaber, a native and citizen of Iran, petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We grant the petition.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

Sharifisaber was served with a notice to appear in November 2003, charging that she was illegally present in the United States, having overstayed her B–2 visitor visa without authorization. Sharifisaber conceded that she was subject to removal, but requested asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Before the Immigration Judge ("IJ"), Sharifisaber testified to the history of her family's mistreatment by the Iranian government and four separate occasions on which she was detained and mentally and physically harmed by Iranian officials. Sharifisaber argues that her mistreatment by Iranian officials demonstrates that she was persecuted in Iran, and that she has a well-founded fear of future persecution, on account of her political opinion and membership in a particular social group.

The IJ found that Sharifisaber had failed to demonstrate past persecution and that, even if she had established past persecution, the presumption of a well-founded fear of future persecution had been rebutted. Accordingly, the IJ concluded that Sharifisaber was not entitled to asylum, withholding of removal, or relief under CAT.

Because the BIA expressly adopted the IJ's decision without opinion, the IJ's decision constitutes the final agency action. See 8 C.F.R. § 1003.1(e)(4)(ii). We review the IJ's determination that Sharifisaber failed to establish qualification for asylum, withholding of removal, or relief under CAT for substantial evidence. See INS v. Elias–Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); Kumar v. Gonzales, 444 F.3d 1043, 1049 (9th Cir. 2006). To prevail under the substantial

evidence standard, "the applicant must show that the evidence not only supports, but compels the conclusion that the asylum decision was incorrect." *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir.2000).

As a preliminary issue, the IJ did not make an adverse credibility determination. To the contrary, the IJ explicitly stated that he could not find Sharifisaber not credible. We therefore accept Sharifisaber's factual contentions as true in our evaluation of her petition. *See Ladha v. INS*, 215 F.3d 889, 900 (9th Cir.2000).

■ Accepting Sharifisaber's factual contentions as true, we find that they compel a reasonable factfinder to conclude that Sharifisaber has suffered past persecution. In deciding whether a petitioner has been persecuted, we must "look[ ] at the cumulative effect of all the incidents a petitioner has suffered." *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir.1998); *see Singh v. INS*, 94 F.3d 1353, 1358 (9th Cir.1996) ("While a single incident in some cases may not rise to the level of persecution, the cumulative effect of several incidents may constitute persecution."). Indeed, not only have we held that physical harm constitutes persecution, *Lopez v. Ashcroft*, 366 F.3d 799, 803 (9th Cir.2004), but we have also held that "[w]here an applicant suffers such harm on more than one occasion, and . . . is victimized at different times over a period of years, the harm is severe enough that no reasonable factfinder could conclude that it did not rise to the level of persecution. . . ." *Id.* (quoting *Chand v. INS*, 222 F.3d 1066, 1073–74 (9th Cir. 2000)). Here, the cumulative effect of the harm inflicted upon Sharifisaber during her four detentions is sufficiently severe that no reasonable factfinder could conclude that it did not constitute persecution.

In 1989, Sharifisaber, whose father had been sent to jail in 1980 for his support of the Shah, was arrested when guards came to her house to arrest her politically active husband. Sharifisaber believed that she was arrested not only because she pleaded with the guards not to take away her husband but also because of her "outspokenness." She was brought to a detention center, blindfolded, and interrogated for three days about the activities of her husband, her husband's friends, and brother. Although Sharifisaber professed ignorance about her husband's political ideology, she was nonetheless called a "dirty dog" repeatedly and, despite being pregnant, was slapped in the face, beaten and kicked, and lashed ten to fifteen times. When she was finally released, she had marks and bruises on her arms, leg and back. Moreover, two days after her release, Sharifisaber required an abortion due to heavy bleeding, which had started following a kick to her side or back on the second day of her detention.

In 1996, the Iranian government seized the company owned by Sharifisaber's uncle because the company had been operating under the Shah's regime and because the uncle was wealthy but failed to pay bribes. Sharifisaber, who was working for the company, was detained along with fifteen other employees. However, after being detained for three days, she was detained for four additional days because she argued with the officials. During her detention, Sharifisaber was interrogated not only about her uncle but also about whether she herself belonged to a political group (she answered no) and about her past political activities. Sharifisaber was told that she was not a believer and had no belief system, statements which, according to Sharifisaber, referred to the fact that while she believes in God, she does not believe in the version of Islam that the government is promoting in Iran. Sharifisaber was also called a whore, accused of being a spy, and told repeatedly that Iran

was not a place for a woman like her. Sharifisaber testified that the detaining officials "really treated [her] badly" by beating her on her legs and arms, causing both bruises and bleeding.

In 1999, Sharifisaber was present at a student protest in which her cousin was participating. When her cousin was arrested, Sharifisaber went to visit him in Tehran's Evin prison. At the prison, she told an officer that the way the government was behaving was making young people turn against its Islamic laws and that the students were going to overthrow the regime one day. The officer responded by pushing Sharifisaber very hard, causing her to trip, twist her ankle, and break her toe. Sharifisaber was then detained for four hours, during which she was interrogated about whether she was affiliated with any political group. Sharifisaber described her interrogation as "mental torture." Only when officials could not force her to admit that she was affiliated with any opposition group did they release her.

In 2000, officials came to Sharifisaber's home to arrest her brother because he was suspected of having participated in several political meetings of university students. The officials arrested both the brother and Sharifisaber herself. Sharifisaber was blindfolded, detained, and interrogated about her brother and his friends. Sharifisaber then told the interrogator that he should be "man enough" to let her see his face, and that the version of Islam that the Islamic Republic had introduced into Iran was shameful; that the current regime was a disgrace to Islam. The interrogator responded by slapping Sharifisaber so hard that her nose bled and she suffered a headache that lasted for days. Sharifisaber was not released until her sister posted the deed of her house as bail, and she

was ordered to report to the authorities every month thereafter.

Our case law demonstrates that the cumulative effect of the abuse inflicted upon Sharifisaber rises to the level of persecution. *See, e.g., Mihalev v. Ashcroft,* 388 F.3d 722, 725, 730 (9th Cir.2004) (finding persecution where Roma Bulgarian was detained three times during which he was forced to do heavy work, was sexually assaulted once, and was beaten every day with bags of sand but without suffering serious injury); *Guo v. Ashcroft,* 361 F.3d 1194, 1197–98, 1203 (9th Cir.2004) (finding that *each* of two detentions of Chinese Christian constituted persecution, where in the first detention he was struck in the face twice, ordered to do pushups until he could no longer perform them, kicked in the stomach, and forced to renounce religion; and where in the second incident he was subdued with an electrically charged baton, kicked in the legs causing him to fall, hit in the face seven or eight times, tied to a chair, and beaten with a plastic pole); *Chanchavac v. INS,* 207 F.3d 584, 587, 589 & n. 3 (9th Cir.2000) (finding persecution where government soldiers entered Guatemalan applicant's home, threw him on the ground, and kicked him all over his body, causing bleeding in his mouth, nose, and on one leg, combined with violence against his family and community).

The record also establishes that Sharifisaber holds a political opinion or that one has been imputed to her by the authorities who persecuted her. *See Sangha v. INS,* 103 F.3d 1482, 1488 (9th Cir.1997) ("[A]n applicant can establish his political opinion on the basis of his own affirmative political views, his political neutrality, or a political opinion imputed to him by his persecutors.").

The fact that Sharifisaber told the officials who detained her in 1999 and 2000 that the current government had estab-

lished a "shameful" version of Islam and was behaving in a manner that was making the youth turn against its Islamic laws demonstrates both that Sharifisaber holds a political opinion and that this opinion was known to the persecutors.[1] Similarly, the fact that in 1996 the detaining officials told Sharifisaber that she was not a believer—referring directly to Sharifisaber's opposition to the version of Islam that the government had introduced in Iran—and that Iran was not a place for a woman like her demonstrates that Sharifisaber's political opinion was known to the persecutors at that time as well.[2]

With respect to the 1989 detention, the record indicates that the detaining officials imputed a political opinion to Sharifisaber, even if her political opinion was not known to the officials at that time. The officials questioned Sharifisaber about her husband, who was in an opposition group, and about her family—specifically her brother, who had been a member of several opposition parties and had been imprisoned and tortured for six years. The fact that the officials had detained Sharifisaber in part because of her outspokenness and that they insulted her and subjected her to severe physical abuse (ultimately requiring her to have an abortion) is a strong indicator that the officials imputed her husband's and her brother's anti-regime, political opinions to her. Indeed, doing so would not have been illogical since Sharifisaber's father had also been jailed for his political beliefs and Sharifisaber herself wore her head scarf in a manner that demonstrated that she was "anti-regime."

The record also demonstrates that Sharifisaber was persecuted "on account of" her own political opinion. "[A]n applicant does not have to provide direct evidence that his persecutors were motivated by one of the protected grounds; instead, compelling circumstantial evidence is sufficient." *Gafoor v. INS*, 231 F.3d 645, 650 (9th Cir.2000). In this case, there is both direct and circumstantial evidence that Sharifisaber was persecuted on account of her political opinion.

There can be no doubt that the abuse inflicted upon Sharifisaber in 1999 and 2000 was the direct result of Sharifisaber's anti-regime, political opinion. In 1999, Sharifisaber was pushed and then detained after she expressed her political views to an official at Evin prison. In 2000, she was slapped in the face (while blindfolded), was not released until her sister posted the deed of her house as bail, and was ordered to report to officials every month after she expressed her political views to the official who was interrogating her about her brother.

With respect to the 1996 detention, powerful circumstantial evidence suggests that at least some of the abuse inflicted upon Sharifisaber was the direct result of her political opinion. During her detention, Sharifisaber was accused of being a spy and a non-believer, and was told that Iran was not a place for a woman like her. She was also beaten on her arms and legs, and was detained for four additional days because she argued with the officials.

Sharifisaber's statements to officials in 1999 and 2000, and the officials' statements to Sharifisaber in 1996, are sufficient to establish that the abuse inflicted upon Sharifisaber during those incidents was "on account of" her political opinion. *See,*

---

1. Interestingly, one might well conclude that Sharifisaber was persecuted on account of both a political opinion and a religious belief.

2. Indeed, the fact that the officials detained Sharifisaber for four additional days because she "argued" with them suggests that Sharifisaber, as she did in 1999 and 2000, made her political opinion known to them.

*e.g., Lopez v. Ashcroft*, 366 F.3d 799, 804 (9th Cir.2004) (finding that persecution was on account of political opinion because Guatemalan guerillas told applicant that he should not work for the wealthy and support the rich); *Borja v. INS*, 175 F.3d 732, 736 (9th Cir.1999) (en banc) (finding that persecution was on account of political opinion because death threats by Philippine revolutionary group followed applicant's articulation of her political opposition to the group).

The evidence concerning the 1989 detention suggests that the detaining officials imputed to Sharifisaber the political opinion of her husband and brother. Considering the severity of the abuse inflicted upon her (including ten to fifteen lashes) the abuse, as was the case in 1996, 1999 and 2000, was at least in part "on account of" that imputed political opinion.[3] Such circumstantial evidence is sufficient to establish the persecutors' motivation. *See Elias–Zacarias*, 502 U.S. at 483, 112 S.Ct. 812 (observing that prosecutor's motivation may be established by direct or circumstantial evidence); *Gafoor*, 231 F.3d at 651–52 (holding that Fijian "soldiers' statements to Gafoor [to 'go back to India' were] unmistakable circumstantial evidence that they were motivated by his race and imputed political opinion"); *Ramirez Rivas v. INS*, 899 F.2d 864, 865–67 (9th Cir.1990) (imputing political opinion of relatives to applicant where applicant was a member of a politically active family, many of whose members had already been persecuted for their political beliefs).

Because Sharifisaber has demonstrated past persecution, she is entitled to a presumption of a well-founded fear of future persecution. *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1135 (9th Cir.2004); 8 C.F.R. § 208.13(b)(1). "The government must then rebut that presumption by demonstrating by a preponderance of the evidence that country conditions have changed or that relocation is possible, so that the petitioner no longer has a well-founded fear that she would be persecuted if she were to return." *Mamouzian*, 390 F.3d at 1135.

The government has failed to rebut the presumption of a well-founded fear of persecution because it has not provided "an individualized analysis of how changed conditions will affect the specific petitioner's situation." *Garcia–Martinez v. Ashcroft*, 371 F.3d 1066, 1074 (9th Cir.2004) (internal quotation marks omitted). In fact, the State Department's 2003 country report on Iran, which is included in the record, demonstrates that, even after Sharifisaber's entry into the United States, Iran continued to see widespread oppression of persons who voiced their opposition to the government or argued for political reform.

Nor is the presumption rebutted by the fact that Sharifisaber twice departed Iran without seeking refuge in either country she visited.[4] Sharifisaber's first departure, to Dubai, was in 1998—two years after her last detention up until that time and a year before her next detention. Aside from the fact that Sharifisaber did not consider Dubai a good place for her to live, it would be reasonable for Sharifisaber to have believed—incorrectly, unfortunately—that the government's interest in her had abated and that there was no

---

**3.** The fact that in 1989, 1996 and 2000 Sharifisaber was initially detained because a family member was the subject of an arrest, and not because of her own political advocacy, does not detract from the fact that the abuse inflicted upon Sharifisaber during those detentions

was on account of her political opinions, which she expressed once she had been detained.

**4.** Sharifisaber testified that she obtained a passport by bribing government officials.

pressing need to permanently leave Iran. With respect to her second departure, in 2001, Sharifisaber testified that she went to Switzerland specifically to obtain a visa to enter the United States. Sharifisaber explained that she did not seek refugee status in Switzerland because she "did not know much about asylum or refugee status at that time." In any event, it is logical that she would try to find refuge in the United States rather than in Switzerland because she has relatives here. Indeed, Sharifisaber's return to Iran was only brief: two months later she entered the United States.

Likewise, the fact that, to Sharifisaber's knowledge, her relatives in Iran have not had recent trouble with the authorities also does not rebut the presumption of a well-founded fear of persecution. The presumption would be rebutted only if the relatives were similarly situated or subject to a similar risk of persecution. *See, e.g., Jahed v. INS,* 356 F.3d 991, 1001 (9th Cir.2004) (where petitioner was singled out for persecution, the situation of remaining relatives in Iran is "manifestly irrelevant"); *Hoxha v. Ashcroft,* 319 F.3d 1179, 1184 (9th Cir.2003) ("[E]vidence of the condition of the applicant's family is relevant only when the family is similarly situated to the applicant.").

Here, the record does not support a finding that Sharifisaber's relatives are similarly situated or subject to the same risk of persecution.

Sharifisaber's brother testified at the immigration hearing that, according to his niece in Iran, government officials have come to the family home to look for Sharifisaber and to demand that she report to them as soon as she returns to Iran. The brother also testified that Sharifisaber would be particularly prone to losing her freedom if she returned to Iran because of "the fact that she talks about her opinions." He explained that, "at a minimum, it is not a very conducive environment for any, any woman, especially for somebody who is outspoken with [sic] the regime and has had some trouble." Indeed, Sharifisaber herself testified, "If I go back to Iran, I am going to a place that there [sic] is jail and torture, because I cannot be silent when I see injustice." [5]

By contrast, the record contains no evidence that Sharifisaber's relatives in Iran are still actively and vocally opposing the regime. Thus, the government has failed to demonstrate that Sharifisaber has not been singled out for persecution and that her Iranian relatives are similarly situated.

In sum, the record compels a finding of past persecution on account of Sharifisaber's political opinion and that the presumption of a well-founded fear of future persecution has not been rebutted. Accordingly, Sharifisaber is eligible for asylum. *See Khup v. Ashcroft,* 376 F.3d 898, 904 (9th Cir.2004) (explaining that "even a ten percent chance of persecution may establish a well-founded fear") (internal citation and quotation marks omitted).

---

**5.** Even if Sharifisaber could avoid persecution in Iran by forcing herself never to express her political opinions, that would not rebut the presumption of a well-founded fear of future persecution. In the context of finding persecution on account of membership in a social group, we have explained that what defines a social group is a common characteristic that the members of the group "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Lin v. Ashcroft,* 377 F.3d 1014, 1028 (9th Cir.2004) (internal citation and quotation marks omitted). Sharifisaber's outspokenness in the face of injustice is a characteristic that is fundamental to her individual identity or conscience. Accordingly, that characteristic should not disqualify Sharifisaber from asylum or withholding of removal.

Sharifisaber also qualifies for withholding of removal. "To qualify for withholding of removal, an alien must demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds." *Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001) (internal citation and quotation marks omitted). Because the authorities have tagged Sharifisaber as a person who is against the regime and continue to search for her, the record compels the conclusion that it is more likely than not that she will be persecuted on the basis of her political opinion if she returns to Iran. *See Zhang v. Ashcroft*, 388 F.3d 713, 718 (9th Cir.2004) (finding it more likely than not that applicant would be persecuted because "the authorities have already identified Zhang as an anti-government Falun Gong practitioner, and have demonstrated their continuing interest in him"). Accordingly, Sharifisaber qualifies for withholding of removal.

Finally, we find that the IJ's conclusion that Sharifisaber is not entitled to relief under CAT is supported by substantial evidence. Sharifisaber has failed to establish that it is more likely than not that she would be tortured if she were removed to Iran. *See* 8 C.F.R. § 1208.16(c)(2).

**PETITION FOR REVIEW GRANTED.**