# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHOUFU ZHAO; ZHENYING DUAN,
                    *Petitioners,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                    *Respondent.*

No. 07-75041

Agency Nos.
A95-303-066
A95-303-067

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 4, 2008—Pasadena, California

Filed August 26, 2008

Before: Stephen Reinhardt, Roger J. Miner,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Reinhardt

---

*The Honorable Roger J. Miner, Senior United States Circuit Judge for
the Second Circuit, sitting by designation.

## COUNSEL

Kevin Long, Esq., Monterey Park, California, for the petitioners.

Gregory G. Katsas, Esq., Susan K. Houser, Esq., Timothy Bo Stanton, Esq., Office of Immigration Litigation, U.S. Department of Justice, Washington D.C., for the respondent.

## OPINION

REINHARDT, Circuit Judge:

Petitioners, Shoufu Zhao and Zhenying Duan, petition for review of the BIA's denial of their asylum claims. Zhao and Duan are a married couple from the People's Republic of China and practitioners of Falun Gong, a spiritual practice banned by the Chinese government. We hold that the petitioners are eligible for asylum because the evidence, especially when viewed in light of our recent decisions in *Zhou v. Gonzales*, 437 F.3d 860 (9th Cir. 2006), and *Zhang v. Ashcroft*, 388 F.3d 713 (9th Cir. 2004), compels the conclusion that

they have established a well-founded fear of future persecution.

## I.  BACKGROUND

Zhao and Duan began their practice of Falun Gong sometime before 1999, after deciding that it could improve their health.[1] In July 1999, the Chinese government declared Falun Gong to be an illegal religious cult and launched a campaign of arrest and abuse against its practitioners. The couple then stopped practicing Falun Gong in public, but continued their practice in private.

On the evening of July 17, 2001, four police officers entered Zhao and Duan's home while they were practicing Falun Gong with two other practitioners. The police arrested them and took them to a police station, where they were detained for four days.[2]

The police interrogated Zhao and Duan twice during their detention, each time separately. During the first interrogation, Zhao and Duan both refused to answer some questions and were forced to stand up straight and still for about thirty minutes. During Zhao's second interrogation, the police told Zhao to "beat" himself. When he refused to do so, a police officer slapped him in the face twice and punched him on the chest. The punch made him fall and hit his head against the wall, causing him "severe pain" and dizziness for which he later received medical attention. The officer also told him that he can make Falun Gong practitioners like Zhao "disappear" and "lose [their] li[ves] without having a chance to file a claim." During Duan's second interrogation, a police officer hit her

---

[1]We have stated in the past that Falun Gong is a spiritual movement based on a blend of meditation and beliefs. *See Zhang*, 388 F.3d at 715.

[2]The other two practitioners were also arrested and released after three days. They have continued to live in China.

twice in the face, pulled out "quite a lot" of her hair, and kicked her.

Zhao and Duan were released after paying a fine, signing a confession and a promise to abandon Falun Gong, and agreeing to report to the police station on a weekly basis and to seek approval before traveling out of the city. Their former employers reduced the couple's pensions on the basis of their arrests. They complied with the weekly reporting requirement but continued to practice Falun Gong secretly.

A few months after their detention, in September, Zhao paid about ten thousand dollars to an acquaintance to obtain passports for himself and his wife. The couple also secured a visa for the United States in December, after traveling to Beijing for an interview on a day that they did not have to report to the police station.

Zhao and Duan entered the United States on December 29, 2001, and filed an affirmative application for asylum within one year of arrival. The case was referred to the immigration court, where they requested asylum, withholding of removal, and CAT relief. The immigration judge (IJ) denied all three forms of relief on June 26, 2006, and granted voluntary departure. The BIA dismissed the appeal on December 13, 2007, finding that neither Zhao nor Duan had shown past persecution or a well-founded fear of future persecution to be eligible for asylum. It also denied withholding of removal and CAT relief.

## II. ANALYSIS

We have jurisdiction to review a final order of the Board of Immigration Appeals ("BIA") under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed the IJ's decision pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872 (B.I.A. 1994), and did not express any disagreement with it, we review the IJ's decision as if it were that of the Board. *Abebe v. Gonzales*, 432 F.3d

1037, 1039-40 (9th Cir. 2005) (en banc). We review findings of fact for substantial evidence and uphold the denial of asylum if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal quotation marks omitted). Reversal is warranted, however, if the evidence in the record compels a reasonable factfinder to conclude that the IJ's decision is incorrect. *Zhou*, 437 F.3d at 865.

In this petition for review, Zhao and Duan raise only their asylum claims. They are eligible for asylum if they show that they are "unable or unwilling to return to . . . [their] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also Duarte de Guinac v. INS*, 179 F.3d 1156, 1158-59 (9th Cir. 1999). A finding of a "well-founded fear of persecution" requires both a showing of "subjectively genuine" and "objectively reasonable" fear. *Ladha v. INS*, 215 F.3d 889, 897 (9th Cir. 2000) (internal quotation marks omitted). The subjective component is satisfied by credible testimony that the applicant genuinely fears persecution. *See id.* The objective prong is satisfied either by a rebuttable presumption arising from a showing of past persecution, or by a showing of "a good reason to fear future persecution" based on "credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution." *Id.* (internal quotation marks omitted). Even a ten percent chance of future persecution may establish a well-founded fear. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001).

In this case, Zhao and Duan satisfied the standard for subjectively genuine fear of persecution by credibly testifying to such fear. *See Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000). The IJ found, however, that the abuse during the couple's detention did not amount to past persecution. She also found that they failed to show an objectively reasonable fear of future persecution.

**[1]** We conclude that, even if the past harm during the 2001 detention did not rise to the level of persecution, substantial evidence does not support the IJ's rejection of the couple's claim of well-founded fear of persecution.[3] This result is dictated by two recent cases: *Zhang v. Ashcroft*, 388 F.3d 713 (9th Cir. 2004) and *Zhou v. Gonzales*, 437 F.3d 860 (9th Cir. 2006). In *Zhang*, members of the petitioner's family had been arrested in China for their participation in Falun Gong demonstrations. *Id.* at 716. Although Zhang himself had never been arrested, the Chinese authorities had discovered his involvement with Falun Gong and had placed the family on surveillance, warning them to report his return to China. *Id.* at 716-17. On this testimony and the record of the Chinese government's crackdown on Falun Gong, we found compelling evidence of a clear probability of persecution and hence eligibility for withholding of removal. *See id.* at 718-21. Similarly, in *Zhou*, we relied on *Zhang* and found compelling evidence of a well-founded fear and a clear probability of persecution because the record established that the police had been searching for Zhou and seeking to arrest her for bringing in illegal Falun Gong materials from abroad. 437 F.3d at 867-868.

**[2]** If the facts in *Zhang* and *Zhou* compelled a finding of a clear probability of persecution for withholding of removal, the facts in the instant case certainly meet the lower standard of a finding of a well-founded fear of persecution with respect to an asylum claim.[4] Much like in the two previous cases, the Chinese authorities have already identified Zhao and Duan as Falun Gong adherents and have shown an interest in monitor-

---

[3]Duan has waived her past persecution claim in the brief before this court, instead presenting only her claim for a well-founded fear of future persecution. As we explain, we need not consider Zhao's claim of past persecution.

[4]*See Al-Harbi*, 242 F.3d at 888-89 ("[The] 'clear probability' standard for withholding of removal is more stringent than the well-founded fear standard governing asylum." (internal citations omitted)).

ing their movements. In fact, unlike Zhang and Zhou, Zhao and Duan have already been arrested, detained for four days, physically abused, coerced into signing a promise to refrain from their practice, and ordered to report to the police once a week. Zhao was abused to the point that he sought medical attention and was threatened with death or disappearance.

**[3]** Zhao and Duan have also submitted documents showing that the "widespread and serious abuses of Falun Gong practitioners" that we previously relied on in *Zhang* and *Zhou* continue unabated. *Zhang*, 388 F.3d at 719; *Zhou*, 437 F.3d at 868. The 2005 State Department Country Reports in the record state that the Chinese government has carried on its "severe campaign against the Falun Gong movement," targeting practitioners for torture, mandatory psychiatric therapy, surveillance, repeated arrests, imprisonment, loss of employment, abuse, confinement in reeducation-through-labor camps, and detention. The report also reveals that several hundred to a few thousand practitioners have died in custody since 1999 due to torture, abuse, and neglect. This evidence of the government-sponsored campaign against Falun Gong, coupled with past harm and evidence of the government's individual interest in Zhao and Duan, compels the conclusion that the couple has a well-founded fear of future persecution. *See Himri v. Ashcroft*, 378 F.3d 932, 936-37 (9th Cir. 2004); *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182-83 (9th Cir. 2003); *Kotasz v. INS*, 31 F.3d 847, 853 (9th Cir. 1994).

**[4]** None of the IJ's reasons for rejecting Zhao and Duan's well-founded fear claim belie our conclusion. First, the IJ found it significant that the couple could acquire a passport and travel to Beijing for a visa interview despite their travel restriction. We have held, however, that a "petitioner's ability to escape her persecutors does not undermine her claim of a well-founded fear of future persecution," *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1137 (9th Cir. 2004), particularly when there is evidence that the petitioner avoided official channels in order to plan an escape. Thus, the fact that the couple

obtained their passports by paying a large sum of money to an acquaintance and the fact that they risked violating their travel restriction in order to obtain a visa to the United States have no relevance to their risk of future harm. *See Khup v. Ashcroft*, 376 F.3d 898, 905 (9th Cir. 2004) (paying a large sum to a broker to obtain a passport does not weaken a well-founded fear of future persecution). Second, the IJ focused on the safety of the two practitioners who were arrested with the couple but continued their lives in China. But the well-being of others who have stayed behind in a country is only relevant when those others are similarly situated to the petitioners. *See id.* There is no evidence here that the other two practitioners continued to practice Falun Gong. By contrast, Zhao and Duan have continued to do so. Accordingly, Zhao and Duan have shown an objectively reasonable fear of future persecution were they to return to China.

### III. CONCLUSION

Because the evidence compels the conclusion that Zhao and Duan demonstrated a well-founded fear of persecution, we grant their petitions, hold them eligible for asylum, and remand for the exercise of the Attorney General's discretion. In view of these conclusions, we find it unnecessary to determine whether Zhao experienced past persecution or whether members of the Falun Gong movement are eligible for asylum under a theory of pattern or practice of persecution.

**PETITION FOR REVIEW GRANTED AND REMANDED.**