**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MUHAMMAD ISLAM,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

No. 10-72359

Agency No. A089-695-547

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 18, 2014
San Francisco, California

Before: BERZON and RAWLINSON, Circuit Judges and LYNN,** District Judge.

Muhammad Islam petitions for review of the Board of Immigration

Appeals's (BIA) decision dismissing his appeal of an immigration judge's (IJ)

decision denying his claims for asylum, withholding of removal and protection

under the Convention Against Torture (CAT). We grant the petition in part.

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\*     The Honorable Barbara M. G. Lynn, District Judge for the U.S. District Court for the Northern District of Texas, sitting by designation.

The BIA denied asylum and withholding of removal, holding that the Pakistani government was not unwilling or unable to protect Islam from the Taliban, and that Islam could safely relocate to another part of Pakistan. Both conclusions are unsupported by substantial evidence. The denial of CAT relief was, however, supported by substantial evidence.

1. The IJ fully credited Islam's testimony, and the BIA did not disturb that determination. We therefore treat Islam's testimony as true. *Wakkary v. Holder*, 558 F.3d 1049, 1056 (9th Cir. 2009). An examination of that testimony indicates that the BIA failed to analyze Islam's claims "in an individualized manner." *Afriyie v. Holder*, 613 F.3d 924, 933 n.6 (9th Cir. 2010); *see also Vitug v. Holder*, 723 F.3d 1056, 1065 (9th Cir. 2013).

The Taliban singled out Islam, threatening to kill him for speaking out against its activities. The Taliban, Islam testified, is "operating all over Pakistan," and uses sophisticated means, such as radio broadcasts, to instill fear in those, like him, who oppose the Taliban. Furthermore, Islam testified, the Taliban has the ability to follow through on its threats: "Whenever [the Taliban] tell somebody that he's to be killed, they won't spare him. He'll be killed right away."

Islam offered compelling evidence illustrative of the Taliban's ability to follow through on its threat against him anywhere in the country. First, Islam's

2

brother-in-law, Murad, was targeted by the Taliban, kidnapped, and murdered. Then, when Islam and another individual, Jameel, spoke out against the Taliban at a memorial for Murad, they were targeted and kidnapped as well. While, as the BIA emphasizes, they did escape thanks to an encounter with the Pakistani army, the Taliban later found Jameel once more and murdered him, taking responsibility for the killing in a radio broadcast.[1] Furthermore, Jameel was killed *not* in the Swat region, which is in the north of Pakistan, but in Karachi, which is on the opposite side of the country from Swat.[2]

The BIA correctly concluded that the record supports the conclusion that the Pakistani government was *willing* to fight the Taliban, but "that says little if anything about whether [it was] *able*" to protect Islam. *Afriyie*, 613 F.3d at 931. The BIA's and IJ's emphasis on the army's rescue of Islam and its successful military campaign against the Taliban in the Swat region is unresponsive to Islam's core claim—that he has been specifically targeted for death by the Taliban—and

---

[1] The government seeks to cast doubt on whether the Taliban targeted and killed Jameel. Islam's credited and unrebutted evidence, however, unambiguously establishes that the Taliban threatened to kill Jameel, killed Jameel, and then took responsibility for killing Jameel.

[2] We may take judicial notice of maps whose accuracy cannot reasonably be questioned. *McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012); *see also Singh v. Ashcroft*, 393 F.3d 903, 905 (9th Cir. 2004).

3

fails to rebut his evidence that the Taliban is able to carry out targeted killings throughout Pakistan. Likewise, the IJ's dismissal of the danger that Islam would be the victim of a non-targeted "terrorist attack" as "speculative" misapprehends Islam's actual claim—that the Taliban will search for, locate, and kill *him*, in particular. Nothing in the country conditions evidence indicates that the government is able to prevent the Taliban from doing so.

2. Likewise, the BIA's conclusion that Islam could reasonably relocate to another part of Pakistan is unsupported by the record. Again, the BIA's emphasis on events in Swat and random terrorist attacks misses the gravamen of Islam's claim: that the Taliban will find and kill *him*, in particular. That Islam could not safely relocate to a different part of Pakistan is established most clearly by his testimony regarding Jameel, who was materially identically situated to Islam, and whom the Taliban *did* find and *did* kill on the other side of the country from Swat. It is difficult to imagine more compelling evidence that Islam could not safely relocate, making it unnecessary to further consider whether, even if he could, it would be reasonable to require him to do so. *See id.* at 934-35.

Moreover, although Islam's family has not been killed, the record indicates that his family moves constantly to avoid the Taliban. Nor is the rest of the family similarly situated to Islam, as they were not previously kidnapped after having

4

been targeted for death. *See Zhao v. Mukasey*, 540 F.3d 1027, 1031 (9th Cir. 2008).

We hold that Islam is entitled to withholding of removal and eligible for asylum, and remand for the agency to exercise its discretion as to asylum. *See Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir. 2004), *superceded by statute on other grounds as stated in Parussimova v. Mukasey*, 555 F.3d 734, 739-40 (9th Cir. 2009).

3. Substantial evidence does support the BIA's conclusion that the Pakistani government has not acquiesced in torture by the Taliban. "[A] government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it." *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) (internal quotation marks omitted).

**PETITION GRANTED in part.**